### Smith v. Commonwealth.

(Decided November 15, 1910.)

#### Appeal from Hardin Circuit Court.

1. Criminal Law—Homicide—Evidence—Competency—Corroborating Evidence.—On the trial of one for homicide, evidence was properly admitted that about a week after the killing the witness made personal observations for the purpose of determining

whether or not a person situated where appellant was at the time, could see the pike where the homicide occurred, for the purpose of corroborating another witness who testified he could see the pike at the place where the deceased was shot.

2. Question by Juror—Right to Ask.—A juror during the trial of a case may ask a witness a question, and, if it is competent and proper, the court should permit or require the witness to answer it.

3. Impeaching Accused.—Where a defendant in a criminal case testifies in his own behalf, his reputation for truth and veracity may be impeached in the same way as that of any other witness.

4. Circumstantial Evidence—Sufficiency—Weight.—A conviction may be had upon circumstantial evidence alone, but where the evidence is partly or altogether circumstantial, the court should not give an instruction upon circumstantial evidence, leaving it to the jury to give it such weight as they think it entitled to.

W. A. BARRY and H. L. JAMES for appellant.

J. R. LAYMAN, Commonwealth's Attorney, G. K. HALBERT, IRWIN & IRWIN. JAMES BREATHITT, Attorney General, and TOM B. McGREGOR. Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellant asks a reversal of a judgment sentencing him to twenty-one years in the State penitentiary for the murder of Jack Irwin. The homicide occurred a little after dark on the evening of October 8, 1909, on a public road in Hardin county, on which the appellant was walking and the deceased riding in a wagon. There were no immediate eye witnesses to the killing, except the parties engaged in the conflict.

It is the theory of the Commonwealth that the appellant when he met the deceased, without excuse or provocation fired the shot that killed Irwin while he was seated in his wagon. While the appellant's contention as set out in his evidence is that when they met, a brief and angry conversation commenced by the deceased took place between them, during which the deceased said that he had intended for some time to whip appellant, and followed this declaration up by jumping out of his wagon, getting a rock, and striking the appellant a blow that knocked him to his knees, and as he was getting up, attempted to strike him again, when in self-defense he shot. He further said that after he shot, the deceased forcibly took the pistol away from him, and while it was in his possession two shots were fired by the deceased.

There is some evidence that a bad state of feeling existed between the parties, growing out of a misunderstanding about a mortgage that appellee's mother had on the property of the deceased, and accusations made by the deceased in reference to appellant's having "plugged" a telephone. On the evening of the homicide and probably an hour before it occurred, appellant went from his house some 600 yards to a place in his woods near the pike where a colored man intended to camp for the night, and remained there a short time engaged in conversation with him. Fouchee testifies that shortly after appellant came to his camp, he heard a wagon on the pike, and observed appellant peering through the bushes that surrounded the camp, looking towards the place from which the wagon was coming; and soon afterwards, he left the camp and went out on the pike, and started towards home, and in a few minutes thereafter three shots were fired. Within five or ten minutes after the shots were fired, John Ray and Jack Peck, who happened to be in the immediate vicinity went to the place where the appellant and deceased were. Ray testifies that when he reached the scene, he found the deceased sitting or lying on the pike with the muzzle of the pistol in one hand and the handle in the other, and appellant standing near to him. The first words spoken were, when appellant said to deceased, "Jack, get up and lets go to supper," whereupon the witness said, speaking to appellant, "This man will never go anywhere to supper —when he leaves here, he will be hauled away from here —this man is going to die, and won't be long about it." And then the deceased said to the witness, "John, he shot me first—yes, he shot me first." Ray then put his hands under the head of the deceased and held him —in this position until he died, about five minutes afterwards. He further testifies that while he was thus holding deceased, the appellant said "I am going up to the house, boys, and if I can do you any good I will be back directly," and also said "He beat me up badly—I am beat up terribly," and then left the scene of the killing. Ray also testifies that appellant was present and near enough to hear the statement made by the deceased, and that the words were spoken loud enough to be heard by him, but that the appellant did not make any response or say anything except what has been related. Appellant when asked in reference to these statements, said that he did

not make the remarks attributed to him, nor did he remember to have heard the declaration of the deceased.

Counsel for the appellant insists that the evidence of Ray, relating to what the deceased said, was not competent, basing his objection to its admissibility upon the ground that it was allowed as a dying declaration; and this is the principle error complained of. It does not appear that the court admitted this evidence as a dying declaration, and we deem it unnecessary to and do not decide whether the testimony shows the statements to have been made by Irwin when in extremis, as it was clearly competent and admissible as a part of the res gestae (Commonwealth v. Hargis, 124 Ky. 366), as well as under the rule admitting statements like this to be received as evidence when they are made in the presence of the accused. (Merriweather v. Commonwealth, 118 Ky., 876.)

The Commonwealth was permitted to show by several witnesses, over the objection of the accused, that about a week after the killing they made personal observations for the purpose of determining whether or not a person situated where appellant was by the camp fire of the colored man, could see the pike at the point where the homicide occurred. This evidence, in our opinion, was competent for the purpose of corroborating the evidence of the witness Fouchee, who testified that he could see the pike at the place where the deceased was shot. It is true these observations were made about a week after the transaction they related to occurred, and that in the meantime the condition of the foilage had changed a little, but this slight difference in the physical conditions went to the weight of the testimony and not its competency.

Objections were also made to the testimony of Dr. English and others, giving measurements made of the wagon, the pike and the road that ran by the side of the pike and on which the wagon was traveling, for the purpose of illustrating that the range of the bullet indicated that the deceased was seated in his wagon and appellant standing on the pike when the shot was fired. We are unable to perceive upon what ground the competency of this testimony can be challenged. In almost every case involving questions like this, evidence of distance, location, conditions and surrounding objects is introduced for the purpose of illustrating the situation of the parties, and when it is confined to facts that may throw

some light upon the matter being investigated, we can think of no reason why it should not be admitted.

Complaint is also made that a juror was guilty of misconduct in asking the appellant while on the witness stand several questions as to why he was carrying the pistol at the time he shot the deceased. These questions, and the answers thereto, were both pertinent and proper for the purpose of developing and showing that in carrying the pistol on that occasion the appellant did so with the expectation that he might or would meet the deceased, and if he did, shoot him. A juror, during the trial of a case, may ask a witness a question, and if it is competent and proper the court should permit or require, as the case may be, the witness to answer it. There is no reason why a juror in an effort to obtain information should not be permitted to ask such pertinent and relevant questions as will enable him to reach an intelligent conclusion. If a juror asks a question that is irrelevant or incompetent, the court on its own motion should admonish the juror that the question is not proper.

It is also assigned as error that the Commonwealth was permitted to impeach the character for morality of the appellant. It has frequently been ruled that when a defendant in a criminal prosecution testifies in his own behalf, his reputation for truth and morality may be impeached in the same way as that of any other witness. It is proper that evidence upon this point should be confined approximately to the time when the accused offers himself as a witness, as this evidence goes to impeach his character as a witness. Lockhart v. Commonwealth, 87 Ky. 201; Commonwealth v. Welch, 111 Ky. 532; Pace v. Commonwealth, 89 Ky. 209; Henderson v. Commonwealth, 28 Ky. Law Rep. 1214. If, however, it developed on the examination of a witness that he was influenced to say that the reputation of the accused for truth and morality was bad because of the crime he had committed and which was then being investigated, and that independent of the odium attached to the accused for its commission he had never heard his reputation for truth or morality discussed, it would not be proper to allow the witness to give evidence concerning the reputation of the accused. But there was no attempt to show, nor did any witness say, that the bad reputation of the appellant for morality had any connection with or grew out of the fact that he had killed the deceased.

It is further urged as error that the court did not properly instruct the jury upon the subject of circumstantial evidence. But this objection is not well taken. The Commonwealth did not depend entirely for a conviction upon circumstantial evidence. By the testimony of Fouchee, as well as that of Ray and Peck, the Commonwealth made out by direct evidence many of the essential facts necessary to prove the guilt of the accused, and there was really no place in the case for an instruction upon the subject of circumstantial evidence. But, aside from this, if the evidence on behalf of the Commonwealth had been purely circumstantial, it was not essential or proper that the trial court should instruct the jury as to the weight to be attached to evidence of this character. A conviction may be had upon circumstantial evidence alone. It is often more conclusive and satisfactory than what is called positive testimony, or testimony out of the mouths of witnesses detailing what they personally know about the transaction being investigated. And when the evidence is partly or altogether circumstantial, the court should not give an instruction upon the subject of circumstantial evidence, leaving it to the jury to give to it such weight as they consider it entitled to.

The jury heard and saw the witnesses testify, and evidently believed that the appellant without legal excuse shot the deceased while he was seated in his wagon, and that after he was shot deceased got out of his wagon, took the pistol away from the appellant and beat him with it. There was sufficient evidence to justify them in coming to this conclusion, and we see no reason for interfering with their finding.

Wherefore, the judgment of the lower court is affirmed.