## Hill v. Commonwealth.

(Decided May 13, 1921.)

### Appeal from McCreary Circuit Court.

1. Criminal Law—Decisions Reviewable.—Since section 281 of the Criminal Code denies to this court jurisdiction to review decisions of the trial court relating to the selection of the jury in criminal prosecutions, we cannot consider the manner of the jury's selection as ground for a continuance.

2. Criminal Law—Continuance.—The trial court did not abuse a sound discretion in refusing a continuance because of the absence of witnesses where the defendant did not show diligence to procure their presence or because of the uncontradicted allegation of his affidavit, that he had not had reasonable opportunity to select or confer with his attorneys, where defendant was represented by counsel and no facts were alleged to show a lack of reasonable opportunity for preparation for trial.

3. Criminal Law—Circumstantial Evidence.—A conviction may be had upon circumstantial evidence alone and this character of evidence is of equal efficacy as direct proof.

4. Criminal Law—Circumstantial Evidence.—It is only where the entire evidence may be as reasonably reconciled with the innocence of the accused that a conviction will not be sustained upon circumstantial evidence alone.

5. Criminal Law—Evidence.—Evidence of the general reputation for morality of a defendant who has testified in his own behalf is competent.

6. Criminal Law—Evidence—Admonition—Impeachment.—It is error for the court to fail to admonish the jury as to the effect of impeaching testimony when an objection or exception or motion is made at the time calling the court's attention to the necessity therefor, but such error will not warrant a reversal of the judgment unless it appears from the whole record that the substantial rights of the accused have been prejudiced thereby.

7. Criminal Law—Witnesses—Avowal.—In the absence of an avowal we cannot determine whether the refusal to permit a witness to answer a competent question was prejudicial or not.

HENRY C. GILLIS and JOHN W. SAMPSON for appellant.

CHAS. I. DAWSON, Attorney General, J. B. SNYDER, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The defendant Wolford Hill was convicted of murdering Luther Hatfield and his punishment fixed at confinement in the penitentiary for life.

For reversal of the judgment it is insisted:

1.   That error was committed in refusing a continuance,

(a)  Because there was no regular jury impanelled.

(b)  Because appellant did not have a reasonable opportunity to prepare for trial.

.   2.   That the verdict of the jury was largely based upon circumstantial evidence and is not supported by sufficient evidence.

3.   Errors in admission of testimony and failure to admonish as to its effect.

1.   Decedent, Luther Hatfield, was killed on October 1, 1920. The next day defendant was arrested and placed in jail, charged with the crime.   An indictment was returned against him on the 3rd day of November and on the next day thereafter same was called and set for trial on the 8th day of November.   When the case was called for trial on the 8th day of November, defendant moved for a continuance and filed his affidavit in support of the motion.   The first ground set up therein is that only eight jurors had been selected and impanelled as the regular petit jury for the term; that there was a great deal of feeling against the defendant; that it would be greatly to his prejudice to be compelled to select a jury from bystanders summoned by the sheriff whom he was advised was hostile to him because of some difficulty between the sheriff and defendant's brother.

Counsel for defendant concede that section 281 of the Criminal Code denies this court jurisdiction to review decisions of the trial court relating to the selection of the jury in a criminal case; but they nevertheless insist that we may consider the manner in which the jury was selected, alleged to be erroneous, as ground for a continuance. Manifestly, this is not true since, so far as this ground is concerned, the refusal to continue the case was error only if the selection of the jury was erroneous, a question which by statute we are forbidden to review.   We cannot of course do indirectly what we are forbidden to do directly, but that is just what counsel are asking by this contention.   The cases cited by appellant in support of the contention (except Risner v. Commonwealth, 95 Ky. 539, which was overruled in Curtis v. Commonwealth, 110 Ky. 853,) are civil cases and therefore not applicable because this court has jurisdiction in civil but not in criminal cases to review the trial court's decisions with

reference to the selection of a jury.    Leadingham v. Commonwealth, 182 Ky. 291.

It is further insisted that the court erred in refusing the continuance because defendant did not have a reasonable opportunity to prepare for his trial, but there is nothing in his affidavit to show this is true.    The names of several absent witnesses are given, with a statement of the facts to which each would testify if present, but there is no showing of diligence to obtain the presence of those residing in the county and the only one alleged to reside out of the county appeared and gave her evidence.    The allegation of the affidavit that the defendant had not had a reasonable opportunity to select and confer with attorneys and prepare the case is but the statement of the defendant's opinion and is not supported by any allegations of fact.    It had been more than a month since the homicide was committed and four days elapsed between the filing of the indictment and the day it was set for trial.    Defendant was represented not only by local counsel but by an attorney from an adjoining county and there is nothing in the record to indicate when they were employed or that the case was not well prepared and tried.    We are therefore of the opinion the court did not abuse a sound discretion in overruling the motion for a continuance.

2.    It is next insisted that the verdict is not supported by sufficient evidence; that the only evidence to sustain it is circumstantial evidence which is as consistent with defendant's innocence as his guilt, but with this view of the evidence we cannot agree.  A conviction may be had upon circumstantial evidence alone and this character of evidence is of equal efficacy as direct proof.  In fact it is sometimes even more satisfactory and conclusive than direct testimony.  Smith v. Commonwealth, 140 Ky. 599; Wendling v. Commonwealth, 143 Ky. 587; Taylor v. Commonwealth, 182 Ky. 728.  It is only where the entire evidence may be as reasonably reconciled with the innocence of the accused that a conviction will not be sustained upon circumstantial evidence alone.  Denton v. Commonwealth, 188 Ky. 30.

About one o'clock in the afternoon of the day of the homicide, decedent's stepbrother, T. Lay Dolan passed along the road near where the defendant was working in his field.    They had not been friendly for more than two

years and their hostile feelings toward each other had been intensified by a difficulty which defendant and Dolan's father had about a week before. Both parties were armed and they had some words but there was no encounter and Dolan went on up the road to his home about four hundred yards distant. Between three and four o'clock that afternoon he and his stepbrother, Luther Hatfield, started, as Dolan claims, to a steam shovel where he was employed as night watchman and to reach which they would pass by the field where defendant was working. Dolan was seventeen years of age and had a rifle. Hatfield was fourteen years of age and had a 38-Colts revolver. As they were passing by where defendant was working and without anything being said all parties began to shoot and it is impossible from the evidence to tell who fired the first shot. There is some evidence to support Dolan's testimony that defendant shot first, since he was armed with a shot gun and several of the witnesses who heard but did not see the shooting testified that the first shot sounded like a shot gun. Other witnesses, however, testified that it was impossible to tell the character of the first shot as there were several almost together and defendant testified Hatfield fired the first shot. But whoever fired the first shot, each of the parties was wounded by the first three or four shots that were fired. Defendant was shot through the right arm by Hatfield, both Hatfield and Dolan were shot by the defendant and after being shot both Hatfield and Dolan retreated, Dolan backed down the road toward his home as he had come to the place of the encounter; while Hatfield left the road and climbed up the mountain side to where there was a thicket and a bench which led toward his home almost parallel to the road below. As Dolan retreated down the road, defendant followed him inside his fence and at or near a drain shot Dolan the third time. Thus far there is little if any conflict in the evidence of Dolan and defendant, the only eye witnesses, except that each claims the other fired the first shot. A number of people heard the shooting and practically all of them agree that there were some seven or eight shots fired and that after an interval there were three more shots fired. The witnesses do not agree as to the length of time that intervened between the two volleys, but no witness fixes it at less than a minute or two while others fix it all the way up to four or five minutes and longer. Dolan testi-

fied that in a minute or two after defendant fired the last shot at him he heard these three shots and that they were up on the hillside to which he had seen Hatfield retreat. Several other witnesses testify that these last three shots came from the direction of the hillside to which Hatfield had retreated, while about the same number did not notice any difference in the direction of the two volleys. Defendant testified that he was not up on the hillside or out of his field and that he did not shoot at Hatfield except from his wagon and while Hatfield was shooting at him.

The first persons to reach the defendant after the trouble were his mother and father who heard the shooting, the one from a distance of about four hundred yards and the other a little less. Both state that they hurried to the scene of the trouble, that when they got there the defendant was standing near his wagon where the shooting began; that they were only a very few minutes in reaching the place of the difficulty and that the defendant could not have fired the three shots on the hillside across the road and gotten back into his field in the time that elapsed between the firing of those shots and their getting into a position where they could see him in the field.

Young Hatfield not having returned home, his mother and one John Kidd shortly after the shooting made a search for him, going past the place of the difficulty to the steam shovel about a half mile distant and passing the defendant on the way. They were unable to find him and the next morning about seven o'clock his body was found by three neighbors up on the mountain side on this bench and almost directly above the place at the drain where the defendant had fired the last shot at Dolan as he retreated toward home. There were spots of blood on the leaves, twigs and ground along the bench on the mountain side from the point directly above where the difficulty had occurred to where Hatfield's body was found. There was blood upon the fence post and mud upon the wire at the place where the defendant fired the last shot at Dolan and from that point up the hill to where Hatfield's body was found there was blood on the bushes and leaves. Eleven steps below Hatfield's body there was found an empty shot gun shell and twenty-seven steps below his body another such empty shell. These two shells had blood upon them and were of exactly the same kind and in the same condition as a shell that was found where de-

fendant stood beside his wagon and admittedly fired his
shot gun at the deceased and Dolan. When decedent's
body was found, all of his teeth save one had been shot
out, one eye was completely shot out and there were sev-
eral shots through the other eye. There was a pistol or
rifle bullet wound in his right jaw and his face was
powder burned. The briars and bushes where his body
was found had been shot through twice by a shot gun
from the direction whence the empty shells were found,
and in line with the bloody trail which led up from the
place at the drain where defendant fired his last shot at
Dolan. By this evidence, though circumstantial, the fol-
lowing facts are established with reasonable certainty, in
our judgment: Hatfield did not receive all of his wounds
in the encounter near defendant's wagon where only de-
fendant admits having fired at him; but after being
wounded there and while he was making his way toward
his home along the bench of the mountain side he was in-
tercepted and instantly killed at the place where his body
was found; and this was done by the person who made
the bloody trail up the hill from the drain at the fence and
who dropped the two empty shells that were found below
his body; and the person who thus shot him to death with
a shot gun also shot him in the face with a pistol or rifle
held so close as to powder burn his face. That the de-
fendant is the person who did this is equally as clearly
established. He had been shot in the right arm and the
wound was bleeding, which accounts for the blood on the
two empty shells as well as along the path leading from
where defendant fired his last shot at Dolan up the hill
to where the decedent was found.

In contradiction of this very convincing circumstan-
tial evidence of defendant's guilt there is only his denial
and the statements of his mother and father that he did
not have time to have gotten back to the field where they
discovered him in the time that elapsed between the last
shot and their arrival upon the scene. Another circum-
stance indicating that defendant fired the three shots, two
from a shot gun and the other from a pistol, into dece-
dent's face is the fact that he denies he had a pistol at
the time of the shooting and claims his wife brought his
pistol and some shells for the shot gun to him at his
father's home after the shooting, but Cal Waters, his
own witness, testifies that as defendant was coming from
the scene of the shooting he saw him have a pistol; and it

is established without contradiction that after defendant reached his father's home he had the pistol and there was one empty chamber in it.   Clearly then the evidence in this case though circumstantial is not such as is as consistent with the defendant's innocence as of his guilt; but is rather of that character which points unmistakably. and unerringly toward the defendant's guilt, and such as will sustain a verdict of guilty as in Taylor v. Commonwealth, *supra,* and other like cases.

3.   It is insisted the court erred in permitting the Commonwealth to impeach the defendant as a witness by proof that his general reputation for morality was not good.   This contention is based upon a statement found in Denton v. Commonwealth, *supra*; but the Code, section 597, expressly permits a witness who has testified to be impeached "by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief."   In L. & N. R. R. Co. v. Scalf, 155 Ky. 273, 159 S. W. 804, it was held to be prejudicial error to refuse to permit evidence as to the reputation of a witness for morality; and this court in innumerable cases has held that the general reputation for immorality of a defendant who has testified in his own behalf is competent as impeaching evidence. The three cases named in the Denton case, White v. Commonwealth, 80 Ky. 480, Combs v. Commonwealth, 160 Ky. 386, and Allen v. Commonwealth, 134 Ky. 110, so held. The court did not err in admitting this evidence.

4.   It is next insisted that it was error upon the part of the court not to admonish the jury as to the purpose and effect of this and other impeaching evidence admitted.   Admitting this to be true it does not result that the error was prejudicial and that reversal must be ordered because thereof.   As stated in Turner v. Commonwealth, 185 Ky. 382:

"The rule is thoroughly established that it is error for the court to fail to admonish the jury as to the effect of such tesitmony when an exception or objection or motion is made at the time, calling the court's attention to the necessity therefor, but it is also as thoroughly established that the error in failing to give the admonition will not authorize a reversal unless it appears from the whole record that the substantial rights of the accused are prejudiced by the failure to limit the effect of the impeach-

ing evidence.'' To the same effect is McDaniel v. Commonwealth, 185 Ky. 608.

Whether or not a failure to give the admonition is prejudicial error depends therefore upon the facts of each case and in a doubtful case it may be prejudicial as in Copley v. Com., 184 Ky. 185; but we are quite sure that in this case the verdict was not induced or affected by such evidence or the failure to give the admonition with reference thereto, and that defendant's substantial rights were not affected thereby; hence the error was not prejudicial here.

5. Complaint is also made of the court's refusal to permit the defendant to answer the question ''Did you go toward the place where they said he was or shoot that way?'' and the question, ''Tell the jury whether or not there was time enough after the shooting over there in the bottom for you to have gone on the hill and shot the boy and then gotten back to the wagon before your father and mother got there.'' The court no doubt sustained the objection to the first question because the witness had already answered the same question substantially and the objection was probably sustained to the latter question because of its form, but even if we admit that the court erred in refusing to permit the defendant to answer these questions, we are unable to determine whether or not he was prejudiced thereby because there is no avowal as to how he would have answered either.

6. Complaint is also made that the court permitted James G. Kidd to state over the defendant's objection that he had heard the defendant's brother, Berry Hill, say that appellant would swear a lie. Kidd had testified as a witness for the Commonwealth in rebuttal that the defendant's general reputation for truth, veracity and morality was bad. Upon cross-examination the attorney for the defendant had pressed the witness to give the names of any persons he had ever heard say that the defendant would not tell the truth when under oath and after defendant named one person who had so stated, counsel for defense asked him, ''Is it not a fact you never heard anybody?'' Witness again said he had heard the one person, George Kidd, so state. Upon re-direct examination the attorney for the Commonwealth asked the witness if he had not heard of defendant's brother, Berry

Hill, saying he would swear a lie and the witness said, "I heard of it."

Admitting that the evidence was incompetent, it is nevertheless so apparently without probative value that it seems quite impossible that it could have had any influence whatever upon the jury. After a careful consideration of the entire record we are of the opinion that it contains no error prejudicial to the defendant's substantial rights, and by section 340 of the Code it is only such errors that authorize a reversal.

Wherefore the judgment is affirmed.