## Slaton v. Commonwealth.

(Decided January 20, 1922.)

## Appeal from Breckinridge Circuit Court.

1. Intoxicating Liquors—Distillers—Illicit Still.—Evidence examined and held sufficient to sustain a verdict that defendant was guilty of having in his possession an illicit still in violation of section 2572c-8, vol. 3, Kentucky Statutes.

2. Criminal Law—Circumstantial Evidence.—A conviction in a criminal case may be had upon circumstantial evidence alone.

CLAUDE MERCER for appellant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, HENRY DeHAVEN MOORMAN and W. SHERMAN BALL for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant, Cliff Slaton, was convicted of having in his possession an illicit or "moonshine" still, in violation of section 2572c-8, vol. 3, Kentucky Statutes, and his punishment fixed at a fine of $250.00 and confinement in the county jail for sixty days.

For a reversal of the judgment his counsel contends that "there is not a scintilla of evidence from which it could be reasonably inferred that the Commonwealth had established that Mr. Slaton had in his possession the still found in his home;" and, although stating that "upon this theory the appellant rests his entire case before this court," he also complains that "quite a good deal of testimony was incompetent and exceedingly prejudicial to Mr. Slaton."

From an examination of the record, however, we find that the defendant offered but three objections during the introduction of the evidence; that only two of his objections were overruled and exceptions saved; and that upon neither of these occasions was the objection directed to any material part of the evidence of which complaint is now made. We need not, therefore, further consider the complaint as to the competency of the evidence upon which the case was tried.

The evidence for the Commonwealth is in substance as follows: On the night of February 2, 1921, Jesse Corman, the sheriff of Breckinridge county, armed with a

search warrant and accompanied by John Carman and James H. Gardner, went to the home of the defendant and found him and Guy Mitcham asleep in the southeast room of the house. When defendant came to the door in answer to the sheriff's summons, and was told by the sheriff that he had a search warrant directing him to search the house for a moonshine still, the defendant replied that there was no still in the house, but that he would help in the search; and, leading the way into the room across the hall from defendant's bedroom, he opened the door to a closet in which the sheriff found a set of plumber's tools. While the sheriff was examining these tools one of his companions informed him that Mitcham, without his hat or coat, had left the bedroom and gone into the kitchen, closing the door behind him. Thereupon the sheriff tried to follow Mitcham but found the kitchen door locked, and defendant suggested that instead of forcing the door the sheriff guard it, while defendant and John Carman would go around the house, come into the kitchen from the outside, unlock the door, and let the sheriff into the kitchen. The sheriff agreed to this and the defendant and John Carman went out the front hall door, but as soon as they got outside the defendant broke and ran, and, although John Carman commanded him to halt and fired several shots at him, he did not stop and was arrested in Louisville about a week later.

Mitcham also made his escape and the officers found in the kitchen quite a large moonshine still, a large tank of mash composed largely of meal, a number of jugs and bottles and quite a quantity of moonshine whiskey. In addition the Commonwealth proved by a number of witnesses that continuously for some time before the blinds of the kitchen window had been drawn and that they had seen smoke coming out of the kitchen chimney at unusual hours; that during this time the defendant was frequently seen on or about the place; that the defendant owned the house and farm of about 240 acres upon which it was located; and that no one but the defendant and Mitcham was in or about the house when the search was made.

Defendant and his witnesses testified that about two weeks previous to the search the defendant had rented part of his farm and the northwest end of his house, including the kitchen and the room where the plumber's tools were found, to a man by the name of Clyde Herms

or Sparrow, whom defendant met by chance on the streets of Louisville and who was a stranger to the defendant and in the community where the defendant's farm is located; that the defendant had spent most of his time in Louisville for a year or more and was at his farm upon but one occasion between the time he rented to Herms and the night of the search; that upon that occasion he discovered the still, etc., in the kitchen and ordered Herms to remove same at once, which he promised to do; that the defendant left for Louisville immediately thereafter and did not return until about dark on the night of the search; that finding Herms gone and the still, etc., in the house he asked Jim Carman and Guy Mitcham to help him move same off of his premises; that because it was then dark and upon the promise of these parties to help him move it the next morning he deferred the matter until then.

In explanation of his flight, defendant stated that he did not know Gardner and, believing that he might be a federal revenue officer and would arrest him, take him to Louisville and put him in jail without giving him an opportunity to give bond, he decided to run rather than risk the explanation he now offers. He denies that the sheriff told him that he was searching for a moonshine still or that he denied that there was one on the place, and states that the sheriff told him that he was looking for moonshine whiskey and that he said that if there was any whiskey in the house he didn't know it but would like to have some of it and would help in the search.

. It was clearly the province of the jury to determine whether or not the explanation offered by defendant and his witnesses of the many incriminating circumstances was true, or not, and unless true, there can be no doubt whatever that defendant was proven guilty as charged of having in his possession an illicit or moonshine still, even though the fact was established by the Commonwealth by circumstantial evidence only.

The rule is firmly established in this state that a conviction in a criminal case may be had upon circumstantial evidence alone, and experience proves that such proof is often more conclusive and satisfactory than positive and direct evidence. Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; Mobley v. Commonwealth, 190 Ky. 424.

We also uniformly have held that this court will not set aside a verdict in a criminal case upon the ground that there is not sufficient evidence to sustain it unless it can be said that the verdict at first blush strikes one as having been reached by the jury as a result of prejudice or passion.   Cloninger v. Commonwealth, 190 Ky. 41.

Such is not the case here and the judgment is affirmed.