## Perry's Adm'x. v. Inter-Southern Life Ins. Co.

(Decided Feb. 7, 1933.)

(Common Pleas Branch, Second Division).

BENJ. F. GARDNER and IRVING WALKER for appellant.

L. H. HILTON and BEN S. WASHER for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

James Perry, a man 46 years of age, was an employee of the F. J. Russ Furniture Repair Company, of Louisville, Ky. On the morning of May 21, 1929, he left his place of employment about 11 a. m., and on the same day between the hours of 6 and 9 o'clock p. m. he was found lying in an unconscious condition on the street near the southwest corner of the intersection of Seventh and Main streets in the city of Louisville, Ky. A United States government mail box, made of sheet iron, weighing about 148 pounds, was found, some witnesses say, on him, and others, that it was near his body. He had a cut about two inches long over the left eye brow; another about the same over the forehead, a little further up over the eye; a three-inch cut on the left cheek running back toward the ear; a laceration of the scalp behind the left ear; bruises on the right side of the chin below, apparently made by a heavy

instrument of some kind, and also a fractured skull—back behind the ear—on the left side.

When he was about thirteen years of age, while riding a horse, he was accidently thrown therefrom and sustained an injury to his leg, which necessitated its amputation about midway between the hip and the knee. From that time, and at the time he was found injured on the street, he had worn an artificial limb, made of English redwood, reinforced with rawhide. The rawhide gave it strength-power of resistance. It was made to stand lots of strain, and would wear eight or ten years. The artificial leg was broken, and witnesses testified that it required great force to break it. He was picked up and carried to the hospital. He was wearing a coat at the time of his injury, which was practically new, made of strong, durable material. The sleeves and elbows of the coat were torn, jagged, and other clothing torn and in a blood-soaked condition. At the time he was found on the street, his head was pointed or lying east, in the direction of the street car track on Seventh street, he was unconscious and bleeding. Those present at the time he was found lying on the street disagree as to the whereabouts of the mail box. One witness stated that it was lying out on the street about eight or ten feet away from him; west of his body. Another witness stated that it was about eighteen inches from his head, lying next to the curb. There was blood in the street, five or six feet from the curb, toward the street car track on Main street. A sack containing tools, or something, was found about or near his body. Another witness testified there was plenty of blood there; that he pulled the mail box off Perry; the top part was lying on his chest. Another witness stated that it was lying back of his head. The majority of the witnesses stated it was not on his body. After he was found, the sack that was lying near his body was placed under his head. A spot of blood was found on the street two feet from the street car track. Before he was injured, he was strong and in good health.

Perry was observed between 6 and 7 p. m., traveling on a Sixth street car, going north. Nothing unusual in his condition was observable at that time. A noise like a mail box falling in the street was heard by several witnesses who were in the immediate vicinity of the place he was found injured. Immediately on hearing the noise, these witnesses went to the place

where he was found, and found him in the condition hereinbefore stated. About the time the noise was heard, several automobiles, ten to fifteen, were in the act of passing. An inspector of the Louisville Railway Company, who was on the northeast corner of Seventh and Main street, and who endeavored to get to the place where the noise was heard, was required to wait the clearing of the traffic before he could go to the place where he located the noise of the falling of the mail box. After he got across the street he went immediately to where Perry's body was lying and in the condition described by him and other witnesses.

Perry never recovered consciousness, and died the next day. At that time and previous to his injury and death, he was insured by a policy issued and delivered to him by the Inter-Southern Life Insurance Company, whereby it agreed to pay to his estate in the event of his death resulting ''by being struck or knocked down, or run over while walking, or standing, on a public highway by any automobile, motorcycle, or bicycle, or any vehicle propelled by steam, cable, naphtha, gasoline, horse, compressed air, or liquid power, including injuries sustained while working on a public highway, or on a railroad right of way.'' The insurance company denied its liability. This action was brought by the administratrix of his estate to recover the face of the policy, $1,500.

The theory of the action is that he was knocked down and injured by a motor-driven vehicle at the time he was found on the street, and that the quoted provision of the policy obligates the company to pay his estate the $1,500. The defense is a denial. At the completion of appellant's evidence the court peremptorily instructed the jury to find for the insurance company. The administratrix appeals.

The decisive question in this case is the correctness of the ruling of the court, giving the peremptory instruction. There were no eyewitnesses to the tragedy, in which he received the wounds causing his death. The evidence is circumstantial.

The court recognizes two kinds of evidence—circumstantial and testimonial. By circumstantial evidence is meant that the existence of the principal facts is only inferred from one or more circumstances which

have been established directly. Textwriters define "circumstantial evidence" in this language:

> "Circumstantial or presumptive evidence is, where some facts being proved, another fact follows as the natural or very probable conclusion from the facts already proved so as readily to gain the assent of the mind from the mere probability of its having actually occurred. It is an inference of a fact from other facts proved, and the facts thus inferred and assented to by the mind is said to be presumed, that is, to say, it is taken for granted until the contrary is proved."

Burril on Circumstantial Evidence, 4; Best on Presumptions, 12; Wills on Circumstantial Evidence, 16; Jones Commentaries on Evidence, vol. 1, sec. 6b, p. 5; Wigmore on Evidence, vol. 1, p. 25.

> "Circumstantial evidence is of two kinds; certain and uncertain. It is uncertain when the fact in dispute is the natural effect of the fact attested, but may likewise have been caused by other things. (Greenleaf on Evidence, sec. 13a) Direct and circumstantial evidence are not different in their nature. Circumstantial evidence is merely direct evidence indirectly employed, and direct evidence when closely analyzed is found to possess an inferential quality. Direct and circumstantial evidence are therefore not in any sense opposite to each other. In fact they are in practice found in the most intimate connection with each other, and the very strongest evidence is that in which the body of direct evidence is sustained throughout by numerous facts and circumstances." Jones Commentaries on Evidence, vol. 1, sec. 5.

Generally, there exists in the minds of many persons strong prejudice against circumstantial evidence. However, it is admissible in both civil and criminal cases in the absence of direct evidence and is often the only means by which a fact can be proved. It should be admitted that if circumstantial evidence were to be excluded in cases of a criminal nature, the majority of criminals would go unpunished. The affairs of the business world could not be carried on, without recognizing the admissibility and rights of circumstantial evidence. It may be, and often is, as strong and as conclusive as direct and positive evidence.

The rule that neither a court nor jury is authorized to indulge in speculation or guesswork does not forbid the admission nor destroy the weight of circumstantial evidence. The proof of facts or circumstances from which it can be properly inferred with reasonable satisfaction to the mind that the act, sought to be established, occurred, or was committed, is sufficient to authorize the submission of an issue to the jury. Louisville R. R. Co. v. Potter, 175 Ky. 258, 194 S. W. 308. Whenever the circumstances proved establish the essential facts required to establish a cause of action, or to show the commission of the offense charged, and identify the defendant as the author of the acts or the perpetrator of the crime, it is sufficient to authorize the submission of the case to the jury. Wald & Co. v. Louisville, Evansville & St. Louis Ry. Co., 92 Ky. 645, 18 S. W. 850, 13 Ky. Law Rep. 144; Mason v. Bruner's Adm'r, 10 Ky. Law Rep. 155; Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S. W. (2d) 373. It is thoroughly established in this jurisdiction that a conviction even in murder cases may be had upon circumstantial evidence alone, when it is of such force as reasonably to exclude every hypothesis of defendant's innocence, and that such evidence is often more conclusive and satisfactory than is positive and direct testimony. Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; King v. Commonwealth, 143 Ky. 125, 127, 136 S. W. 147; Wendling v. Commonwealth, 143 Ky. 587, 137 S. W. 205; Mobley v. Commonwealth, 190 Ky. 424, 227 S. W. 584; Bowling v. Commonwealth, 193 Ky. 642, 647, 237 S. W. 381; Daniels v. Commonwealth, 194 Ky. 513, 514, 240 S. W. 67.

A conviction on circumstantial evidence alone was approved in Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; Slaton v. Commonwealth, 193 Ky. 449, 236 S. W. 952; McKinney v. Commonwealth, 208 Ky. 322, 270 S. W. 800; Newton v. Commonwealth, 222 Ky. 817, 2 S. W. (2d) 661.

In criminal cases it is only where the entire evidence may be reasonably reconciled with the innocence of the accused that a conviction of the accused will not be sustained upon circumstantial evidence alone. Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910; Mitchell v. Commonwealth, 217 Ky. 155, 289 S. W. 208; Jones v. Commonwealth, 217 Ky. 427, 289 S. W. 676; Johnson v. Commonwealth, 217 Ky. 705, 290 S. W. 693.

It is an established rule, recognized by both the text-writers and the courts, that "the concurrence of well authenticated circumstances possesses a stronger character of essentials than positive testimony, unconfirmed by circumstances, usually affords." Wigmore on Evidence, sec. 26.

Viewing the uncontradicted facts in the present case as they are established by the testimony of the witnesses, in the light of the rule, and the reasons for it controlling circumstantial evidence, it is our conclusion that the administratrix was entitled to have the issue, presented by her pleading and evidence, submitted to the jury by appropriate instructions. The nature and extent of the injuries inflicted on Perry, and the presence of motor-driven vehicles at the time and place he was injured, without any evidence whatsoever tending to show that his injuries could possibly have been inflicted other than by a passing motor vehicle, authorized and required submission of the case to the jury. The character and extent of his injuries are not otherwise explained or accounted for by any evidence, either circumstantial or testimonial, tending to show they resulted on any other hypothesis than that they were inflicted by a passing motor vehicle. It is argued that it is established that his injuries were not inflicted by a motor vehicle, by the fact that no operator of such vehicle slowed up or stopped, or otherwise indicated that such operator of motor vehicle had knowledge thereof.

Such argument is not logically consistent with the known habits of many operators of motor vehicles, for many of them do not stop and consider their own acts, nor render aid; nor does it afford a hypothesis upon which it may be insisted that his injuries were not caused by a motor-driven vehicle. The insurance company cites and quotes the rule that where the cause of the action producing the injury, or the manner of its occurrence, is a matter of surmise, conjecture, or speculation, the case should not be submitted to the jury. In support of this contention, it cites Cochran's Adm'r v. C. & O. R. R. Co., 232 Ky. 107, 22 S. W. (2d) 452, and cases cited therein; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106; North American Accident Ins. Co. v. West, 245 Ky. 316, 53 S. W. (2d) 692; and other cases applying the

same principle.  The facts in no one of those cases are comparable to those in the present case.

The giving of the peremptory instruction in our view of the case was an error entitling the administratrix to a reversal.

Therefore the judgment is reversed and remanded for proceedings not inconsistent with this opinion.