## Sams v. Commonwealth.

(Decided Oct. 15, 1937.)

J. D. VIA for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment declaring the appellant, Homer Sams, guilty of murdering Forrest Arnold, and sentencing him to life imprisonment.

The evidence heard against the appellant upon this trial was wholly circumstantial, and it is earnestly insisted, by brief of counsel, that it was of insufficient probative value to authorize the submission of the case to the jury or to support its verdict finding him guilty.

The evidence introduced for the Commonwealth shows that the deceased, Forrest Arnold, was found dead in a room of the house in which he lived as a tenant on the farm of a Mr. Edwards in Hickman county, Ky., together with Arthur Mosier, about the 16th or 17th of December, 1936. The evidence clearly established that the dead bodies of both Arnold and Mosier were found in the room of this house under such circumstances as showed that they had been shot and killed with a shot-

gun some days before found, while they were sitting at the dining table eating their meal (presumably supper).

The attending circumstances of their murder, shown both by the character and position of their fatal wounds and the positions in which the bodies were found, that of Arnold slumped upon the table, his head resting in his plate, while Mosier was upon the floor nearby the dining table, clearly established that their ·deaths were caused, not by accident or a fight between them or suicidal act, but that some outside criminal agency was responsible for this double homicide.

Also, the evidence shows, or tends clearly to show, that the fact of Arnold's and Mosier's murder was not discovered until several days after this crime had been committed, when others upon the farm, after missing them for several days about the farm or cabin where they lived together, grew suspicious of harm having befallen them and began a search for them, first at their home, where their dead, frozen bodies were found and reported.

Upon investigations made, following the discovery of this double homicide, conducted by county officials and assistants about the Arnold home, in order to discover, if possible, any clews leading to the identification and apprehension of its perpetrator, clearly defined shoe tracks were found leading from the house of the deceased Arnold (whose murder was here alone involved and for which crime only the accused was convicted) back to the home of the accused, about a mile distant therefrom, and also like tracks leading away from the home of the accused towards that of Arnold, where he was shot and killed.

The sheriff, a witness for the Commonwealth, when asked if he had seen any tracks near or about the house where the bodies were found, stated that he had seen tracks, "just a little ways from the house * * * when we hit the cotton patch we found them leading northeast," directly towards accused's home, and which he and the detectives assisting him followed to the public road, about 25 yards west of the accused's home. In this he is corroborated by the other officers. Further he testified that the man who made those tracks, as was shown by them, was running and jumping "from one cotton row to another"; that this inspection of the premises, and the finding of these tracks by him, was made with-

in about a week after receiving information of Arnold's death. Also, the sheriff and the other officers testified that, after finding these tracks, they were called by Mr. Kimble, a brother-in-law of the accused, who lived on the same farm with him, who there showed them like tracks, made in a pasture field near the accused's home, which he told them were made by the accused either on the day of or the day previous to his arrest for this crime.

Both of these tracks, those leading from the home of the deceased to that of the accused and those made in the pasture field at the accused's home, which were pointed out and identified by his brother-in-law, Kimble, as being tracks of the accused, were, when each was measured and carefully compared, found to correspond completely in every detail, and tended strongly to show that the tracks found by these witnesses, leading from the home of the deceased to that of the accused, were the foot tracks of the accused.

Of course, appellant denies that any of these tracks were made by him, and states that while the tracks shown the officers in the pasture field at his house could have been made by *his shoes,* being the same in their size and shape as those made by his shoes, that nevertheless the tracks could not have been recently made by him, inasmuch as he had not worn his shoes for three or four months previously, during which time they had been kept and used by another.

Further, the evidence for the Commonwealth, introduced for showing the accused's motive for killing Arnold, shows without contradiction that in the later part of November, next preceding the murder of the deceased (indicated by the evidence to have occurred about the 16th or 17th of December), the accused and deceased had a fight, in which the accused, it appears, was badly cut up and scarred and wounded by the deceased; that after this difficulty the accused, smarting under his mistreatment by the deecased, talked with two of the Commonwealth witnesses, who testified that they had met and conversed, shortly before the homicide occurred, with the accused, at certain named times and points in Columbus, when the accused, after showing them the knife wounds and scars inflicted upon him by the deceased in their recent fight, and as if his feelings were then still vindictive towards Arnold because of the humiliating punishment suffered at the hand of this one-

armed man, had threatened and declared to him, the witness Lewis Mosier, that "no one-armed son of a bitch is going to get away with it, he is not going to get away with it." This threat, he states, was made by the accused to him about December 8th, or slightly more than a week before his charged murder of Arnold. Also, Mr. Dowdy, another Commonwealth witness, testified that he had heard of this recent cutting of the accused by the deceased and that shortly thereafter he had met the accused, when a conversation arose between them about it, in which the accused, after showing him his scars, inflicted on him by the knife of the deceased, wound up by making the threat, "I will get revenge some day"; that, when this statement was made, he was at the time talking about the deceased Forrest Arnold, but did not then expressly call his name. Also, witness states he asked the accused at that time if he was going to take this cutting affair into court, to which he answered, "No," but that he said he would "get revenge some day."

The accused, in testifying, denies also the making of these threats, introduced in evidence by the Commonwealth for showing motive on the part of the accused for his charged killing of Arnold.

Upon completion of the Commonwealth's incriminating evidence, which tended to show that the deceased had been murdered and that the accused's killing of Arnold was motivated by his desire for revenge, as shown by his threats made against the deceased (that "no one-armed son of a bitch is going to get away with it" and that he would "get revenge some day"), and its further evidence introduced as to finding near the place of the homicide fresh tracks made by some one, as if fleeing from the house of the deceased in the direction of and nearly to the home of the accused, and which tracks the evidence strongly tended to identify as being the tracks of the accused, motion was nonetheless made by defendant for a peremptory instruction, which was denied.

Again, at the conclusion of all the evidence, the motion was renewed and denied, when the court instructed the jury as follows:

"If the jury believe from all the evidence in this case *to the exclusion of every reasonable doubt,* that the defendant, Homer Sams, * * * did * * * of his malice aforethought, kill, slay and murder Forrest

Arnold, then the jury should find the defendant guilty of wilful murder.'' (Italics ours.)

And further, by instruction No. 2, the court told the jury that:

"If you have a reasonable doubt from all the evidence of the defendant having been proven guilty, you will find him not guilty."

Upon the jury's returning, upon this evidence and under such instructions, a verdict finding the accused guilty and fixing his punishment at life imprisonment, the accused filed motion and grounds for a new trial and, further, a second motion and grounds therefor. These additional alleged grounds for a new trial we deem it unnecessary to here in detail consider, inasmuch as (even if some of the grounds assigned as errors could be considered as meritorious entitling appellant, had he timely and properly urged them therefor, to a continuance of his case) it is shown by the record that no motion was made upon the call of the case for a continuance upon any ground, but that both the Commonwealth and the accused then announced ready for trial.

Further, it is stated, as the fourth ground assigned in appellant's additional motion and grounds for a new trial, that the court erred in permitting the Commonwealth's attorney to state in his argument to the jury that a child, Raymond Howell Kimbell, "did state that he was down at a certain school house and saw some person that had a mask over his face, on some night and that Homer Sams was present," to which the defendant at the time objected and excepted, on the ground that the statement went outside the record, in that the said Kimbell was not present and did not testify upon the trial, from which it resulted that highly prejudicial evidence went to the jury without admonition given by the court that it be not considered by it.

It is again sufficient answer to this argument to say that, even if this alleged misconduct of the Commonwealth attorney occurred without reprimand or admonition given by the court, it is not shown that any was asked, nor is this complaint properly here before us, for the reason that the complained of error, if such, is not set out in nor made a part of appellant's bill of exceptions.

While the alleged improper argument is pointed out in the motion and grounds for a new trial, we do

not find in the bill of exceptions any reference to it, and, therefore, the misconduct of counsel, if such it was, is not available error on this appeal. "If counsel desire to rely for reversal on the fact that opposing counsel was guilty of misconduct in the argument of the case, the improper argument should be shown in a bill of exceptions, together with the objections and exceptions to it that were made at the time." Chesapeake & O. Ry. Co. v. Stapleton, 154 Ky. 351, 157 S. W. 702, 703.

As to the sufficiency of this circumstantial evidence introduced by the Commonwealth, when considered in connection with and strengthened by the evidence adduced of a motive, harbored by accused to get revenge upon the deceased for having cut him: Motive, experience teaches, is a very potent force, in directing and prompting the actions of men. For such reason, even though it may be conceded that, in itself and when standing alone, it is insufficient to support conviction for crime, it is yet of such effective force and influence in bringing about the commission of a crime that, where motive is supported by other circumstantial evidence tending to fix responsibility for the crime upon the accused, it is deemed sufficient to support a verdict of conviction.

There was here before the jury not only direct testimony of witnesses as to threats made to them by the accused against the deceased, that he would get revenge upon him for his having cut him up, but there was also the strong and very potent evidence that tracks, identified by the evidence as those of the accused, were found leading from the home of the deceased to that of the appellant, the suspected perpetrator of the crime.

In the case of Cassell v. Commonwealth, 248 Ky. 579, 59 S. W. (2d) 544, 546, there was presented the question, as here, whether established motive, when supported by other circumstantial evidence, constituted sufficient evidence to support a conviction. The court, in holding it sufficient and discussing the potency of motive as evidence supporting conviction for crime, said:

"Motive is a principal, though psychological, fact. Indeed, it is the manifest source and spring of all criminal action, and may justly claim to rank at the head of positively criminative circumstances. Burrill on Circumstantial Evidence, 282, 313. Insufficient in itself to prove guilt, its presence is al-

ways an important consideration, and * * * in prosecutions dependent upon circumstantial evidence for conviction, * * * motive may be decisive, although by no means conclusive.''

To like effect see Roberson's New Criminal Law, sec. 1791, where this language is used as to force and competency of evidence showing motive for the commission of the crime:

"The question in every criminal prosecution is, Did the prisoner commit the crime charged, and had he any motive to do so? Evidence tending to show motive or the absence of motive for the commission of crime is always admissible, though it is never indispensable to a conviction that a motive should appear; nor is the Commonwealth under any obligation to prove a motive. But in cases of doubt, or in those depending upon circumstantial evidence, or where the defendant denies the act, the question of motive may become a material and important fact.''

Counsel for appellant contends that the accused's threat that he would get revenge may have referred to his intention to bring the deceased into court, and that he had had a warrant taken out for the deceased's arrest for his cutting of him. Also, he contends that the evidence of the Commonwealth, showing tracks to have been made, by shoes of a kind and size as those worn by the accused, between the house of the deceased and his own and also in the pasture field near his home, though identified by evidence as being in all respects identical, was of no substantial or probative value, for the reason that there were perhaps a thousand pairs of shoes sold in the vicinity of the same kind and size as accused's which could have made these tracks and all of which he denied were his.

The question as to the worth and weight of this circumstantial evidence, tending to show that the tracks leading from the accused's home to the house where the homicide was committed or the other tracks leading from the latter back towards his home were the accused's, when considered in connection with the charged revenge motive of the accused (shown in evidence by the two threats testified to as made by the accused against the deceased just prior to the latter's murder), was one resting with and properly submitted to the jury, and where it has found or believed from all the evidence, "to

the exclusion of every reasonable doubt," that it possesses all the necessary links of proof required to establish accused's conviction, we will not disturb its finding, as, in our opinion, this evidence, when considered together, was quite sufficient to support their verdict, as was held in the Cassell Case, supra. In the Cassell Case, when discussing the sufficiency of circumstantial evidence, even when standing alone, to support a conviction, we said:

"Looking to our cases for precedents and authority, we have many holding that circumstantial evidence alone, if within the rule excluding every other hypothesis, is enough to support a verdict of guilty of the most atrocious crime. Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; Dorsey v. Commonwealth, 158 Ky. 447, 165 S. W. 405; Taylor v. Commonwealth, 182 Ky. 728, 207 S. W. 456."

Also, in the Smith v. Commonwealth Case, cited therein, the court said as to this:

"A conviction may be had upon circumstantial evidence alone. It is often more conclusive and satisfactory than what is called positive testimony, or testimony out of the mouths of witnesses detailing what they personally know about the transaction being investigated."

And again, in the case of Dorsey v. Commonwealth, supra, upon this subject we further said:

"Although circumstantial evidence alone is sometimes looked upon with suspicion, yet, where all the links are supplied in the chain of circumstances, it alone is held to be sufficient to authorize a conviction."

In the instant case, the jury were told that they must believe, in order to find the defendant guilty from all the evidence, to the exclusion of every reasonable doubt, that the defendant had shot and killed the deceased.

The jury, upon this issue here submitted, it should be presumed obeyed the instruction given them and found no single feature lacking in this circumstantial evidence (especially when strengthened and supported by this further positive evidence as to the accused's threats, evidencing a hostile motive towards the deceased) to support its verdict finding him guilty.

Being of the opinion that there was sufficient evidence to justify the jury in coming to the conclusion it has reached, and that the defendant has had a fair trial, we see no reason for interfering with their finding. Therefore, the judgment is affirmed.