## C., N. O. & T. P. Ry. Co. v. Mullane's Admr.

(Decided January 14, 1913.)

### Appeal from Pulaski Circuit Court.

1. Negligence—What Constitutes—Moving Cars Not Under Control—Duty of Court to Instruct As to.—Under the circumstances, the act of allowing the cars to move without anyone on them to control their movement and give notice of their approach, was negligence and it was the duty of the court to so instruct the jury.

2. Railroads—Rule Governing Employes of—Application.—The rule introduced in evidence has no application to this case, and any rule which would justify or excuse the acts of the employes in this case would be unreasonable.

3. Contributory Negligence—Submission of Question to Jury.—It was proper for the court to submit to the jury the question of the decedent's contributory negligence, and the language used by the court was apt.

O. H. WADDLE & SON, JOHN GALVIN, for appellants.

MORROW & MORROW, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This in an appeal from a judgment for $5,000.00 rendered in behalf of appellee, Mullane's administrator. The facts are about as follows: Mullane was employed by the railroad company to receive, unload and distribute its supplies, such as angle bars, &c., in its yards at Ferguson, and had been so employed for many years. Upon the morning that Mullane was killed, a car containing

angle bars was placed on a siding at a point fourteen or seventeen feet from the lead track, and Mullane called one Sawyers, a section foreman, and told him to bring two of his hands and unload the bars. The engine that placed the car containing the angle bars, moved down the lead track to the roundhouse, got six loaded cars that were ready to be moved out of the yards and shoved or kicked them onto the lead track, cut the engine loose from them and allowed them to continue going without any one in charge of them. Before the cars were turned loose, however, those in charge of them looked down the track they were going on but could see no one. As stated, the six cars were not in the control of any one after they were kicked onto the lead track, but were allowed to continue to move and to stop of their own accord without any one on them to give warning of their approach. The manner in which Mullane was killed can best be related by copying from the testimony of Sawyers, the section foreman, who, after stating that he and Mullane opened the door of the car containing the bars and told the section hands to get into the car and unload the bars, testified as follows:

"Q. Did he say anything about the number that he wanted?

"A. Not a word; I commenced pulling them out while the men climbed up in the car door, and I stayed out north of the car door and he stood between the two tracks, and he hollered to me 'get out of the way, Sawyers,' in a laughing way, and as he stepped back he got on the end of the ties against the rail, and as I turned to walk away from the car door (my back was to the south) and those cars was trailing down on him about one or two feet of his shoulder, and I hollered for him to get out of the way, but there was no time and they rolled him down and he fell and the cars turned him around—almost completely around—and three cars passed over him and 12 wheels."

He further testified that the cars came up without making any noise and that he did not see them until they were within a foot or two of Mullane. Those in charge of the cars testified that they always made that kind of a switch when making up a train, and introduced the following rule:

"When cars are pushed by an engine (except when shifting and making up trains in yards) a flagman must

take a conspicuous position on the front of the leading car and signal the engineman in case of need.''

They also testified that Mullane had been in the service of the railroad company for a long time and that he was acquainted with the rule and with this method of switching cars as well as any one. It is further shown by the testimony that the Ferguson yards are large; that there are from three to five hundred employes in the yard every day and that they would pass from one part of the yard to another.

The rule introduced, has no application to a case like this. It says, ''when cars are pushed by an engine * * * * a flagman must take a conspicuous position on the front of the leading car,'' &c. Thus it will be seen that the rule applies only when there is an engine attached to the cars, in which case if the engine is ''shifting and making up trains in yards'' it does not require a flagman to occupy a conspicuous place on them. There was no rule introduced which authorized those in charge of the cars that struck Mullane to turn them loose, as they did, without some one in a conspicuous place on one of them to give warning of their approach, and if such a rule had been introduced, it would have been unreasonable.

Upon this state of case, the court gave the jury, among others, the two following instructions:

''A. If you believe from the evidence in this case that the defendants, Andy Glasgow and Pete Burdell caused, suffered or permitted several or any cars to run over the defendant's track without any person or persons in a position on said cars to give warning of their approach and to control their movements, and that said cars ran against or over R. D. Mullane and killed him, then this was negligence and you will find for the plaintiff against all the defendants, C. N. O. & T. P. Ry. Co., Andy Glasgow and Pete Burdell, unless you shall believe from the evidence that the plaintiff himself was guilty of contributory negligence as set out and defined in instruction No. 'B.' and that but for his negligence it would not have happened then in the latter event you will find for the defendants.

''B. Although you may believe from the evidence that defendants or either or any of them were guilty of negligence as referred to and defined in these instructions, but you shall further believe from the evidence that the plaintiff's intestate failed to exercise ordinary

502 KENTUCKY REPORTS. [Vol. 151.

care to discover the approach of the cars and to keep out of their way, and such failure on his part so contributed to his injury and death that but for such failure his injury and death would not have occurred, you will find for the defendants."

The court gave other instructions, but the two copied were the only ones affecting the right of recovery. Appellants contend that the instruction first copied was in effect a peremptory instruction directing the jury to find for the plaintiff. They claim that the court should not have told the jury that the defendants were guilty of negligence if they did certain things, but should have left it for the jury to say whether or not the doing of those things constituted negligence on the part of the defendants. The evidence, without contradiction, showed that the six cars were turned loose on the lead track without any one on them to give warning of their approach; and if this were negligence it was the duty of the court to so tell the jury. This court has said in the cases of L. & N. R. R. Co. v. Potts, 92 Ky., 30; Shelby v. C. N. O. & T. P. Ry. Co., 85 Ky., 225, and Conley's Admr. v. C. N. O. T. P. Ry. Co., 89 Ky., 402, that shunting cars was of itself negligence, therefore, the court did not err in giving the instruction complained of.

It was proper to leave to the jury the question as to whether or not Mullane was guilty of contributory negligence, and the language in which the court submitted the question, to-wit: "If the intestate failed to exercise ordinary care to discover the approach of the cars and keep out of their way," &c., was as strong language as appellants were entitled to have it.

For these reasons, the judgment of the lower court is affirmed.