## Twin City Fire Insurance Co. v. Lonas.

(Decided Oct. 16, 1934.)

718

F. M. DRAKE and W. D. GILLIAM for appellant.
A. J. OLIVER and N. G. GOAD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

John D. Lonas, appellee, brought this suit in the Allen circuit court to recover of the Twin City Fire Insurance Company, appellant herein, $1,000, the amount of a fire insurance policy covering the household goods and other contents of a dwelling in Scottsville, Ky. For convenience we will refer to the parties as plaintiff and defendant according to their respective positions in the lower court.

Defendant filed its answer in which it traversed all the material allegations of the petition and pleaded in paragraph II that the fire was caused or brought about by the plaintiff or some person acting with his knowledge or consent and with the purpose and intent that the property referred to in the petition should thereby be destroyed. In paragraph III it pleaded a certain provision of the policy, to wit:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any materal fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

It further alleged that the amount of plaintiff's loss by the fire was not in any material sum and has not amounted to as much as $1,000 or to as much as $100, and that plaintiff's claim was fraudulent, in that he was attempting to collect a sum far in excess of his actual loss.

The evidence was taken and the jury returned a verdict for plaintiff for the sum of $850. From that judgment defendant brings this appeal.

There are a number of alleged errors complained

of in defendant's motion and grounds for a new trial, but in its brief it only insists that the court erred in its ruling respecting the evidence, to which ruling we will later refer after giving a resume of the evidence.

Plaintiff testified that he and his wife left their home on Monday or Tuesday and did not return until after the fire, which was on Saturday following. He stated that he did not know whether or not they left the doors locked, but said that his wife usually locked the doors when they went away. According to the evidence of plaintiff and the furniture dealer who sold him a part of the household goods alleged to have been destroyed by the fire, the costs of the furniture when purchased amounted to $1,678.75, and consisted of five rugs, dining set, a dresser, washstand, kitchen cabinet, chairs, and rockers, $125 worth of clothing, refrigerator, hatbox, davenette, Victrola, library table, and numerous other articles which go to make up household furnishings, including three bedsteads well furnished. The house consisted of five rooms, three down stairs and two up stairs, all of which were well furnished.

E. S. Morgan, chief of police of Scottsville, and also chief of the fire department, testified that he received a fire call at 3:30 a. m. on August 6, 1932, and, when he arrived, the house was afire practically all over, and he tried to get in and found the doors all locked and the windows down. After getting the fire under control, they entered the house to put out the fire on the inside. They entered the house by forcing or breaking open the kitchen door and entered by way of the kitchen into a room that goes up to the stairway, and there found a folding bed. It had a mattress and a sheet on it only, but they did not notice or find any other beds at all. He was asked to tell the jury what he found in the house in the way of bed clothing, and he answered: "I saw one quilt by the fire at the stairway, looked like it had been brought down the steps." He stated that he did not see any other quilts, nor any signs or indications of any quilts having been burned. They went all over the house, up stairs and down stairs, looking carefully to see about the fire. They found no signs of beds or bed clothing having been burned. He found only one rug about 18 inches to 2 feet wide and 4 feet long, lying approximately between two rooms, but there was no rug or floor covering on the front room downstairs or no part of one or indications that any had

been burned. He was asked to state what he discovered as to what might have caused the fire or contributed to it, and in response he said there was oil on the floor and a hole about 12 inches square cut in the floor near the stove which indicated it had been "hacked," and the hole was stuffed with a lot of rags and oily sacks and papers soaked with coal oil, and the floor around the hole was scorched; that there were indications that the fire had started in the kitchen and under the rafters on both sides of the stairs and the middle of the house, but the floors up stairs were not burned much. He found a five-gallon coal oil container with about a quart or half gallon of oil in it, sitting close to the hole in the kitchen. He looked in the drawers of a chiffonier and dresser and found nothing in them except some quilt pieces and face powder, but found no clothes, linens, or bed clothing. He did not see plaintiff nor any of his family while he was attending the fire, but saw plaintiff the next day. Plaintiff went to the house and examined it, but made no explanation as to what had become of such articles and furniture as were not found in the house. On cross-examination the witness was asked if the house showed evidence that it had been burglarized, and, in response, he said:

"Somebody had got this stuff out. Q. You said there were three or four different fires and yet the house was afire all over—how do you mean? A. It looked to me like somebody went along with a pan of coal oil and slugged it in there. The floor wasn't hurt except on the west side of the house; that porch floor was the worst place, but it looked like the paint wasn't hurt at all up this side of the wall."

Roy Dye was next called for defendant, and plaintiff objected to Dye testifying unless his testimony tended to connect plaintiff with the fire. The court sustained the objections and said:

"I think you would have to connect the plaintiff with the fire. I will let you examine this witness outside the presence of the jury."

Counsel for defendant then stated that he had about fifteen other witnesses whose testimony would be along the same line as that of the witness Morgan and perhaps other matters, and insisted that he be allowed to introduce Dye and all the other witnesses and examine them in the presence of the jury, but the court refused

to permit any of the witnesses to be introduced and examined in the presence of the jury unless they were first examined out of the presence of the jury for the purpose of the court determining the competency of their testimony respecting plaintiff's connection with the fire. Counsel for defendant refused to submit to this method of procedure, whereupon counsel for plaintiff moved the court to exclude the testimony of the witness Morgan, and the court sustained the motion. Upon the suggestion of the court, the following stipulation was agreed upon by counsel for the respective parties:

"It is stipulated that the following witnesses would be called on behalf of the defendant and their testimony would be excluded upon the objection of plaintiff, upon the same ruling and for the same reason that the defendant is refused permission to place before the jury the testimony of Roy Dye, Ross Wark, B. C. Sims, B. C. Cline, B. B. Cline, Ottis Meador, C. A. Settle, J. C. Pitchford, G. T. Traughber, T. A. Pardue, Mrs. Ora Coots, Mrs. Leania Shrum, Clarence Sanders, Leovell J. Sanders and Rena Huntsman.

"The testimony of E. S. Morgan is excluded from the consideration of the jury; and under the direction of the court and by agreement of the plaintiff by counsel, this stipulation is placed in the record to have the same effect as if said witnesses had been personally placed upon the stand and their testimony offered and excluded.

"To all of which the defendant, by counsel excepts and objects."

Defendant then introduced Malcolm Crump, state deputy fire marshal, and examined him respecting his investigation of the fire and what action, if any, was taken by him pursuant to the investigation. It would serve no good purpose in the decision of this case to discuss the evidence of this witness or the purpose for which it was introduced.

The court then in effect peremptorily instructed the jury to find for the plaintiff the cash value of his personal property claimed to have been destroyed by fire. The propriety of the instructions is not insisted upon in brief for appellant, and, the determination of the case having been rested upon the ruling of the court

respecting the evidence as above stated, it is not necessary to pass upon the instruction.

The value of the property destroyed by the fire and the origin of the fire were put in issue by the pleadings. The evidence of the chief of police, Morgan, and that of other offered witnesses as set out in the stipulation, was competent and should have been submitted to the jury with appropriate instructions for its determination of the issue. According to the evidence of Morgan, the major part of the household goods claimed by plaintiff to have been burned had been taken out of the house before the fire occurred. Conceding, without deciding, that the house had been burglarized and the property taken therefrom before the fire, plaintiff's recovery under the fire insurance policy would be limited to such property as was actually burned. A fire insurance policy does not insure against burglary or any loss otherwise than that stipulated in the contract.

With reference to the issue as to the origin of the fire, the evidence is circumstantial only. By circumstantial evidence is meant that the existence of the principal facts is only inferred from one or more circumstances which have been established directly. Textwriters define circumstantial evidence in this language:

"Circumstantial or presumptive evidence is, where some facts being proved, another fact follows as the natural or very probable conclusion from the facts already proved so as readily to gain the assent of the mind from the mere probability of its having actually occurred. It is an inference of a fact from other facts proved, and the fact thus inferred and assented to by the mind is said to be presumed, that is to say, it is taken for granted until the contrary is proved."

Perry's Adm'x v. Inter-Southern Life Ins. Co., 248 Ky. 491, 58 S. W. (2d) 906, 907.

The rule that neither a court nor a jury is authorized to indulge in speculation or guesswork does not forbid the admission nor destroy the weight of circumstantial evidence. The proof of facts or circumstances from which it can be properly inferred with reasonable satisfaction to the mind that the act sought to be established occurred or was committed is sufficient to authorize the submission of an issue to the jury. Louisville R. Co. v. Potter, 175 Ky. 258, 194 S. W. 308; Wigmore

on Evidence, sec. 26; Perry's Adm'x v. Inter-Southern Life Ins. Co., supra.

In the case at bar, we have these cricumstances: Plaintiff had his household goods insured; according to his evidence, he and his family left his home on Monday or Tuesday before the fire on Saturday following and did not return until the day of the fire. The fire occurred at 3:30 a. m. without any person having occupied the house since Monday or Tuesday previous. According to the evidence of Morgan, a major portion of the household goods had been removed. The doors were all locked and the windows down; rags, papers, and other material saturated with kerosene were found in the house and a hole had been cut in the floor; oil had been poured over the house in various places, and the fire not concentrated at any one point. The only explanation suggested to account for these circumstances is the probability that the house was burglarized and then set on fire by the burglars to cover up their crime. True it is, burglars not infrequently resort to setting a house on fire after they have robbed it, but the circumstances of this particular case may repel such inference. If burglars had entered this house and carried out the household goods, including large pieces of furniture, which the evidence conduces to show had been taken therefrom, and then set the house on fire on the inside, as the evidence shows it was, it would indeed be strange that they would take the time and precaution to lock the doors or put the windows down and securely close the house, as it was according to the evidence of the fire department.

It is our conclusion that these circumstances have some probative or evidential value and should have been submitted to the jury, and the trial court erred in excluding from the jury the evidence of Morgan and refusing to allow defendant to introduce other witnesses or hear other evidence on the issues.

The judgment is reversed and remanded, with directions to grant defendant a new trial and for proceedings consistent with this opinion.