## City of Louisville v. Bailey's Guardian.

(Decided Feb. 4, 1936.)

GAVIN H. COCHRAN for appellant.

WM. J. GOODWIN and DAVID SESSMER for appellee.

OPINION OF THE COURT BY JUDGE REES--Affirming.

Jane E. Bailey, an infant, suing by her statutory guardian, obtained a judgment for $3,600 against the city of Louisville for personal injuries alleged to have been received by her as the proximate result of the negligence of the city in failing properly to maintain one of its streets. The plaintiff claimed that while crossing Garland avenue in the city of Louisville, she stumbled and fell, her head striking the rear fender of a passing automobile, and that her fall was caused by a defect in the street. She suffered a fractured skull, and there is no contention that her injuries were not serious.

The appellant concedes that the evidence shows that the street at the point where the accident occurred was in a defective condition, and had been so for a sufficient length of time to put the city on notice, and that the condition of the street was such as to make the city liable if the defect in the street caused the accident; but it insists that the evidence fails to establish any causal connection between the defective condition of the street and the injuries complained of, and that the trial court erred in submitting the case to the jury. It further insists that even if the necessary quantum of evidence was present to authorize the submission of the case to the jury, the verdict is flagrantly against the weight of the evidence. It is appellant's theory that the evidence fails to present facts from which a logical inference can be drawn that the defective condition of the street was the proximate cause of the accident, and that the jury necessarily based its verdict upon mere speculation or conjecture. It relies upon that line of cases in which the principle is announced that where the evidence connecting the plaintiff's injuries with the defendant's alleged negligence amounts to mere speculation or conjecture, no case for the jury is presented.

At the time of the accident, January 28, 1934, the plaintiff, then not quite six years of age, lived with her parents on West Kentucky street in Louisville. At about 11 o'clock in the morning of that day, Mrs. Bailey sent her daughter, Jane, to a grocery store, more than a block away, to purchase a package of cigarettes and a loaf of bread. The store was operated by Mrs. Amelia Witzig, and was located on the northwest corner of Seventeenth street and Garland

avenue. The entrance to the store is on Garland avenue, a few feet west of Seventeenth street. After she had made her purchases, the plaintiff left the store and started directly across Garland avenue. Mrs. Witzig heard her scream, looked out, and saw her lying in the street a few feet from the curb, her feet toward the store, and near several holes in the street. Herbert French was standing in Garland avenue with his back to the store, and about three feet from the curb line of Seventeenth street, waiting for an automobile to pass before crossing Garland avenue. The automobile was traveling westwardly along Garland avenue, at a speed of about fifteen miles an hour, and was approaching French from his left. While he was standing in this position, the plaintiff came out of the store and started across Garland avenue. When French first saw her, she was seven or eight feet out into the street, south of the north curb line, and seven or eight feet to the right, or west, of French. He testified as follows:

"Q. Where was the child when you first saw her? A. She was about,—I would say about from three to four feet of the machine. I could not say whether she was three or four from the machine.

"Q. From the machine? A. Of the machine.

"Q. The machine was going which way? A. Going next to Eighteenth.

"Q. That would be west? A. That would be west.

"Q. What kind of a machine was it? A. Well, it was an undertaker's car.

"Q. Well, was it the usual big undertaker's automobile that you put anyone in? A. Yes sir.

"Q. Did it have a cab up in front? A. Yes sir; a cab up in front.

"Q. Could you give us about what speed that hearse was going at? A. It was not making over fifteen miles an hour, at the biggest.

"Q. And now what was the child doing when you saw it? A. Well, it looked like she was stumbling when I seen her, into the car.

"Q. The child was stumbling? A. Into the car. It looked like she was in a stumble, falling.

"Q. What was the condition of the street just in back of the place where her feet were, as you saw her stumbling? A. Pretty rough street in the back.

"Q. Is there any holes there? A. Well, right there there are, at the middle post. Well, all up and down that there square is pretty rough, because I went out there day before yesterday and took a particular look at it.

"Q. You say it is pretty rough. Will you give us a more detailed statement of what you call 'pretty rough.' Can you describe it? A. Well, it has an extra high curbing.

"Q. Yes. A. And I would say about a six inch drop.

"Q. From that curbing? A. To the street.

"Q. Then there is what, the gutter? A. Then the gutter.

"Q. And then out from the gutter what has happened to the street? A. It is all broken and torn up out in there.

"Q. Now, can you,—suppose you tell us or show us, if you will, just how the child was, or just what she did,—how she did,—what happened to her? A. Well, when I first turned around I was waiting for the same car, and she was going like this (indicating with head down), and I seen she was in too much of a speed to have stopped.

"Q. What was she doing, you said stumbling? A. She was stumbling into that machine. It looked like she was trying to catch herself, but was in too much of a speed to catch herself.

"Q. Was she falling? A. She looked like she was falling.

"Q. Falling? A. In a falling condition.

"Q. And was that right at the time and the point where this particular hole in the street is? A. Well, it is all torn; and in that place there it is all torn up.

"Q. And what you mean is— A. She was stum-

bling and she put her hands around to protect herself, it looked like in this position (indicating).

"Q. What did she do with reference to the automobile? A. When the automobile struck her she fell.

"Q. What part of the automobile did she come in contact with? A. With the back fender."
On cross-examination, he said:

"I was three feet out in the street myself, and the car came along, and I was waiting for the same car, and the car got about seven or eight feet down there, going next to Eighteenth street, down on past me, and then out came this Jane, little Bailey girl, and ran into it, and then I turned around and gave her a look out one corner of my glasses, and I seen she was about three or four feet of the car in a stumbling condition. * * * If she had been two seconds later, the machine would never have hit her. * * * She was running. Running in a falling condition."

Gilbert Wermuth was introduced as a witness by the defendant. He was in the Witzig store, and saw the plaintiff leave by the door on Garland avenue. He did not see her cross the sidewalk or the curb and gutter, but he saw her after she started across the street. She was running, and was going directly across the street, from the front door of the store. He saw her strike the automobile when she was about six feet from the north curb, but did not see her stumble and did not know whether she stumbled or not. On cross-examination, he stated that her forehead struck the automobile, and he believed she was falling forward toward the automobile when he saw her.

In describing the condition of the street at the point where the accident occurred, Ollie L. Bailey said:

"The mud gutter running west from the corner of Seventeenth and Garland on the north side is broke, I will say for fifteen or twenty feet, maybe more; and the bottom looks to me like it is stones that have been broken, and the top surface is about six inches from the bottom."

In describing the condition of the street in front of the door to the store, he said:

"That is all holes, and there are three or four holes. They are pretty deep. It looks like the macadam, or whatever you call it, the paving, is all broken there, and it looks like the street has been repaired right straight across that one spot, and that is all irregular and broken up, and that bottom part is made of stone, and they are irregular and none of them the same. It is all uneven. The bottom of the hole looks like somebody just took the pick and picked it up and left it laying that way."

He further stated that the holes were about six inches deep. Mrs. Witzig testified that there were several holes in the street a few feet from the north curb, directly in front of the door to the store, and at the point where she saw the plaintiff lying after the accident.

In an action for damages resulting from injuries alleged to have been caused by the negligence of the defendant, the burden is upon plaintiff to establish: (1) A duty which the defendant owes to him; (2) a negligent breach of that duty; (3) injuries resulting proximately from the breach of that duty. The plaintiff's evidence was sufficient to sustain the burden as to propositions 1 and 2, and it remains to be determined whether or not the evidence was sufficient to establish with reasonable certainty that the defendant's negligence was the proximate cause of plaintiff's injury. In Steele's Adm'r v. Hillman Land & Iron Co. (Ky.) 114 S. W. 311, 312, it was said:

"The rule is well settled in this state that it is not enough to prove negligence and injury. The burden is on the plaintiff to prove negligence naturally resulting in the injury. Unless the proof connects the proven injury as a rational and proximate result of the proven negligence, there is nothing to submit to the jury. The absence of evidence upon any material point is as fatal to him who has the onus as the absence of all evidence would be."

It does not follow, however, that causal connection between the act of negligence and the injury cannot be established by circumstantial evidence. Where facts are established from which a logical inference

can be drawn that the negligence of the defendant was the proximate cause of the injury, and no other reasonable inference is deducible therefrom, the case should be submitted to the jury. As was said in Twin City Fire Ins. Co. v. Lonas, 255 Ky. 717, 75 S. W. (2d) 348, 350:

> "The rule that neither a court nor a jury is authorized to indulge in speculation or guesswork does not forbid the admission nor destroy the weight of circumstantial evidence. The proof of facts or circumstances from which it can be properly inferred with reasonable satisfaction to the mind that the act sought to be established occurred or was committed is sufficient to authorize the submission of an issue to the jury."

Both appellant and appellee cite numerous cases in support of their respective contentions, in all of which the facts are somewhat similar to the facts in the present case. No two cases are alike, however, and each case must be determined on its own facts. Here it was shown that the street at the place of the accident was in a defective and dangerous condition. The plaintiff crossed the street at the point where the defects were located, and stumbled and fell into the passing automobile. The evidence is reasonably clear that she stumbled at the point where the holes in the street were located. That one of these holes caused her to stumble, and thus caused the injury, is a logical inference from the proven facts. The case nearest in point cited and relied upon by appellant is City of Paducah v. McManus, 256 Ky. 405, 76 S. W. (2d) 254, in which it was held that the evidence was sufficient to take the case to the jury, but not sufficient to sustain the verdict for the plaintiff. In that case, the plaintiff fell on a sidewalk and was seriously injured. There was a defect in the sidewalk near the place where she fell. Mrs. Bradley, the only witness who was present, admitted that she did not see Mrs. McManus fall, and no one testified that she stepped in the hole or stumbled. The evidence in the instant case, tending to show that plaintiff was caused to fall by the defect in the street, was much stronger than in the McManus Case, and the facts are very similar to those in the case of Louisville & N. R. R. Co. v. Snow's Adm'r, 235

Ky. 211, 30 S. W. (2d) 885, in which it was held that they were sufficient to sustain the verdict.

Judgment affirmed.