## Wilder's Administrator v. Southern Mining Co.

(Decided May 19, 1936.)

GOLDEN & LAY for appellant.

N. R. PATTERSON and T. E. MAHAN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal presents for review the action of the court giving a peremptory instruction at the instance

of the Southern Mining Company at the close of the evidence in behalf of the administrator of Martin Wilder's estate.

The Southern Mining Company, a corporation, was engaged in mining coal in Bell county, Ky. Martin Wilder, a young man about twenty-one years of age, was in its employment as "empty hole coupler." He was working at the time of his injuries, "at the underpass of the empty track under the slate dump track." This underpass was about thirty-four inches from the floor to the overhead and twelve or fourteen feet wide. It was formed by the empty hole track passing under the slate track. Wilder's usual duty was to couple empty cars on the empty hole track. Occasionally, a car loaded with coal would become wedged in the underpass, when it would be his duty to couple it to the cars attached to the motor so it could be pulled through the underpass. In some instances, it was necessary, and became his duty, to move blocks of coal off of the top of the wedged car by hand or with a pick or any way he could, so the loaded car would pass under the trestle. The loaded car when wedged in the underpass was pulled by the motor operated by the motorman, onto the empty track around to the dumping device and tipple. At the time Wilder sustained injuries, resulting in his death, he was under the trestle in the underpass, to couple the wedged car to the approaching empties for the purpose of removing the wedged car with the empties. Within about four minutes after he went under the trestle to perform this duty, he was dragged by the moving cars from under the trestle. His overalls were thereby ripped from the top through the middle of the crotch; his breast crushed; ribs broken and "bulged up."

At that time and place J. Mooney was the motorman in charge of the motor and the attached cars which were to be coupled by Wilder to the wedged one. S. B. Saylor was the motorman's assistant. His duties were those of a coupler "after the motor." In coal mining parlance, they were "buddies." They were at the shop. Wilder was at "the slate track," about sixty feet from them. He "hollered" to them "to come on back and pull a car out from under the trestle." At that time they were at the corner of the shop, about fifteen car lengths from the motor. Immediately after calling them,

he "started back toward the trestle." Mooney "turned and went back toward the motor." Saylor "went into the shop." Mooney could not see from the shop, or from the motor, back under the underpass. It was Wilder's duty when the backing was completed to make the coupling in the underpass. It was Saylor's duty to be at a point where he could give signals to the motorman and at the same time see and warn Wilder. He was not at a point where he could give signals to the motorman and see or warn Wilder, but was at the shop at the time Wilder was injured. After Wilder requested them to help remove the wedged car, the motorman went to his motor and "began to back up," and while so engaged he could not see Wilder and Wilder could not see him.

The motorman was asked and answered thus:

"Q. Had you before this time had experience with cars being hung under the underpass? A. Yes sir" "I [had] pulled four or five cars out."

"Q. Tell the jury how you handled each of those cars before this as compared to this one? A. Always backed up and pulled them through.

"Q. Where was the coupling made? A. Under the trestle.

"Q. And when you started to back this time did you know that this car was under the trestle and that the coupling would be made under it? A. Yes sir. * * *

"Q. Describe what you did from the time you got on your motor and started to back until you learned that Wilder had been injured? A. I backed up as far as I thought I ought to and couldn't hear anybody and stopped and got out and one of the boys hollered at me and said Martin was hurt and I went under the trestle. * * *

"Q. When you backed your cars, backing for the purpose of the coupling on this car, where should you have stopped? A. I should have stopped when they bumped when they touched.

"Q. Did you? A. No sir.

"Q. How far back did you go beyond the

place before you should have stopped? A. About six car lengths.

"Q. Why did you back further than you should have backed? A. I didn't hear no signals. * * *

"Q. Tell the jury where your coupler [Saylor] should be when there is an occasion that a car is hanging under there? A. On the curve where you can see me and the other fellow too.

"Q. Was he there on that occasion? A. No sir, he wasn't.

"Q. Under those circumstances, tell the jury whose duty it was to signal you on this occasion? A. S. B. Saylor's.

"Q. That's your coupler? A. Yes sir.

"Q. And not the man that is coupling under the underpass? A. No sir.

"Q. At the time you saw Martin Wilder, as you say, fifty or sixty feet from the underpass and just immediately before he was injured, tell the jury what was the condition of his overalls? A. As far as I know, they were alright. * * *

"Q. Describe their condition when you next saw them after the accident? A. They was ripped on the left side here and ripped around about there, had a little place split right through the bib, an inch, or two or three inches."

Other verbal testimony and the circumstantial evidence corroborate that of Mooney, but it is entirely unnecessary to narrate either. The evidence also shows that a certain bolt was out of the frame of the trestle and a post thereof was out of position. The absence of the bolt, the condition of the post, and the dimensions of the underpass were no more than innocuous conditions, present on the occasion of Wilder's injuries, and in no wise causally connected with his injuries.

"The courts generally agree that 'where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other merely furnishing the condition or giving rise to the occasion by which the injury was made possible, the former will alone be regarded as responsible for the

result.' See 62 C. J. sec. 40, p. 1127. This principle was recognized and applied by this court in Trauth v. Mackin Council, 179 Ky. 137, 200 S. W. 338; Burton v. Cumberland Tel. & Teleg. Co. (Ky.) 118 S. W. 287. To the same effect see Home Oil & Gas Co. v. Dabney, 79 Kan. 820, 102 P. 488; Eberhardt v. Glasgow Mut. Tel. Ass'n, 91 Kan. 763, 139 P. 416; Stone v. Boston & Albany R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; Orton v. Pennsylvania R. Co. (C. C. A.) 7 F. (2d) 36; Missouri Pac. R. Co. v. Columbia, 65 Kan. 390, 69 P. 338, 340, 58 L. R. A. 399.'' See Fiechter v. City of Corbin, 254 Ky. 178, 71 S. W. (2d) 423, 428.

It is very clear that the absence of the bolt from the frame of the trestle, the condition of the post, and the dimensions of the underpass cannot be considered as a remote cause of Wilder's injuries.

The Southern Mining Company's view of the accident, Wilder's injuries, and the proximate cause thereof, is stated thus:

"He was seen right after the injury lying partly under the trestle and partly outside and he had been crushed in the chest and his overall bib had been torn and pulled apart in front, as described by the witnesses and about which there is no conflict. As to what happened to him underneath that trestle nobody knows, whether his overall bib caught on the car and pulled him between the cars or as to whether he slipped and fell between the cars or whether he was dragged against the top of the trestle or crushed between the cars, nobody knows. Nobody attempts to tell whether his feet slipped and he fell into this moving trip and his overalls caught and dragged him upon the coal or down between the cars, nobody knows. As to whether the overalls caught on the car without any slipping of his feet, nobody knows. He was evidently undertaking to make a coupling and had partly completed it, but as to why he did not fully complete it, nobody knows. Many theories of what happened to him in a few seconds at this point where he was injured might be advanced, but when finally tested, they will become theories."

This impercipient statement of the decisive issue evinces a disregard of the controlling facts and the

governing principles applicable thereto, as we shall hereinafter endeavor to show.

It should be admitted that in going under the trestle to couple the wedged car to the empties, and in making the coupling, Wilder was in no danger of an injury, unless and until the empties, as they were moved by the motor, approached and contacted the wedged car. The movement of the empties by the motorman, as described by him, manifestly jeopardized Wilder.

It is true his exact position or how he was engaged at the time of the contact of the empty cars with the wedged one, or when or how his clothing was thereby caught, breast crushed, and his ribs broken, in some way by the oncoming cars, are not described by an eyewitness; but the circumstantial evidence establishes that the contacting the wedged car with the empties, as the latter were moved by the motor under the control of the motorman, contemporaneously happened with his injuries. This circumstance establishes sufficiently, without the testimony of an eyewitness, the causal connection of his injuries and the approaching empties under the control of the motorman. Louisville & N. R. Co. v. Snow's Adm'r, 235 Ky. 211, 30 S. W. (2d) 885; City of Louisville v. Bailey's Guardian, 262 Ky. 486, 90 S. W. (2d) 712.

"The presumption is always that no one will voluntarily do or fail to do an act that places his own life in peril; but that he took ordinary precaution for his own safety." Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S. W. (2d) 708, 714. The law presumes that one will not commit suicide. Sovereign Camp of Woodmen of the World v. Valentine, 173 Ky. 182, 190 S. W. 712. Where one has the right to be, it will not be presumed that he carelessly imperiled his own life. Cox's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 238 Ky. 312, 37 S. W. (2d) 859. Wilder's estate would be entitled to invoke these general principles if it were necessary to exculpate the decedent of contributory negligence. The accepted rule is, neither negligence nor contributory negligence will ever be presumed. It must first be proved. The burden was on Wilder's estate to establish the negligence of the Southern Mining Company as the sole cause of his injuries, or that it, combined with the contributory negligence of Wilder, was

the proximate cause thereof. While its negligence cannot be presumed, it may be inferred from proven facts as established by the verbal testimony and the attending circumstances. Louisville & N. R. Co. v. Snow's Adm'r, supra; Perry's Adm'x v. Inter-Southern Life Ins. Co., 248 Ky. 491, 58 S. W. (2d) 906, 908.

In the Perry Case, we said:

"The rule that neither a court nor jury is authorized to indulge in speculation or guesswork does not forbid the admission nor destroy the weight of circumstantial evidence. The proof of facts or circumstances from which it can be properly inferred with reasonable satisfaction to the mind that the act, sought to be established, occurred, or was committed, is sufficient to authorize the submission of an issue to the jury. Louisville R. R. Co. v. Potter, 175 Ky. 258, 194 S. W. 308. Whenever the circumstances proved establish the essential facts required to establish a cause of action, or to show the commission of the offense charged, and identify the defendant as the author of the acts or the perpetrator of the crime, it is sufficient to authorize the submission of the case to the jury. Wald & Co. v. Louisville, Evansville & St. Louis Ry. Co., 92 Ky. 645, 18 S. W. 850, 13 Ky. Law Rep. 853; Mason v. Bruner's Adm'r, 10 Ky. Law Rep. 155; Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S. W. (2d) 373. It is thoroughly established in this jurisdiction that a conviction even in murder cases may be had upon circumstantial evidence alone, when it is of such force as reasonably to exclude every hypothesis of defendant's innocence, and that such evidence is often more conclusive and satisfactory than is positive and direct testimony. Smith v. Com., 140 Ky. 599, 131 S. W. 499; King v. Com., 143 Ky. 125, 127, 136 S. W. 147; Wendling v. Com., 143 Ky. 587, 137 S. W. 205; Mobley v. Com., 190 Ky. 424, 227 S. W. 584; Bowling v. Com., 193 Ky. 642, 647, 237 S. W. 381; Daniels v. Com., 194 Ky. 513, 514, 240 S. W. 67.

"A conviction on circumstantial evidence alone was approved in Smith v. Com., 140 Ky. 599, 131 S. W. 499; Slaton v. Com., 193 Ky. 449, 236 S. W.

952; McKinney v. Com., 208 Ky. 322, 270 S. W. 800; Newton v. Com., 222 Ky. 817, 2 S. W. (2d) 661.''

Viewing the established facts and circumstances in the present case as they are proven by the testimony of witnesses in the light of the rule, and by the reason for it, controlling circumstantial evidence, it is our conclusion that Wilder's administrator was entitled to have the issues presented by his pleading and evidence submitted to the jury by appropriate instructions. The nature and extent of his injuries, the backing of the empties and the motor, controlled alone by the motorman at the time and place he was injured, without any evidence whatsoever tending to show that his injuries could possibly have been inflicted other than by his so backing them, authorized and required the submission of the case to the jury.

If Wilder had been performing his ordinary duty as ''empty hole coupler,'' in his usual place of work, instead of performing it under the trestle, the duty then would have been on the Southern Mining Company to give warning of the approach of the cars for the purpose of his coupling them and to control their movements so as not to run against or over, injure or kill, him, and its failure so to do manifestly would constitute negligence on its part. Cincinnati, N. O. & T. P. R. Co. v. Mullane's Adm'r, 151 Ky. 499, 152 S. W. 555; Chesapeake & O. R. Co. v. Lang's Adm'x, 135 Ky. 76, 121 S. W. 993; Chesapeake & O. R. Co. v. Richards' Adm'r (Ky.) 126 S. W. 1105; West Kentucky Coal Co. v. Davis, 138 Ky. 667, 128 S. W. 1074; McCalley's Adm'r v. Chesapeake & O. R. Co., 169 Ky. 47, 183 S. W. 234, L. R. A. 1916F, 551.

Under the trestle was not his usual place of work. At the particular moment of his injuries he was performing parlous services of a pressing necessity, in an exigency, on an occasion calling for immediate action or remedy, in an extrahazardous place, not constructed for, and in which to perform, such services—all of which were known to the motorman and Saylor. It was, therefore, their duty to exercise care, commensurate with the impending danger incident to his working thereat, to avert injuring him, which included caution, slow movement of the empties, a lookout for his safety, and rea-

sonably adequate warning of the oncoming, approaching cars.

The facts do not bring this case within the rule that neither a court nor a jury is authorized to indulge in speculation or guesswork. That rule does not destroy the efficacy of the circumstantial evidence showing that his injuries were the proximate result of the motorman's and his assistant's negligent operation of the cars to which he was endeavoring to couple the wedged car. It is within the familiar rule that where the proven facts or circumstances are such from which it can be properly inferred, with reasonable satisfaction to the mind, that the act sought to be established, occurred or was committed, is sufficient to authorize the submission of the issue to the jury. See Twin City Fire Ins. Co. v. Lonas, 255 Ky. 717, 75 S. W. (2d) 348; Louisville & N. R. Co. v. Snow's Adm'r, and City of Louisville v. Bailey's Guardian, supra.

It is agreed that the Southern Mining Company at the time had not elected to operate, and was not operating, under the Workmen's Compensation Law, and Wilder was not working thereunder. This fact deprives the Southern Mining Company of the defense of contributory negligence, assumed risk, and the negligence of a fellow servant. Section 4960, Ky. Statutes; Wm. McKinley Helton v. Gunn Coal Mining Co., 258 Ky. 168, 174, 79 S. W. (2d) 695; West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S. W. (2d) 479; Duvin Coal Co. v. Fike, 238 Ky. 376, 38 S. W. (2d) 201; Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416.

The trial court in giving the peremptory instruction overlooked the proven facts and the controlling principles reiterated herein.

Wherefore, the judgment is reversed, with directions to award Wilder's estate a new trial and for proceedings consistent herewith.