## Louisville Railway Company v. Potter.

(Decided April 27, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Carriers—Personal Injuries—Damages—Appeal and Error.— Where, in an action to recover damages for personal injuries claimed to have been sustained by the plaintiff from a fall in stepping from a street car, the petition alleged that the fall occurred from the catching of her skirt on some part of the car because of its negligent construction and defective condition, but on the trial the plaintiff's evidence failed to show any defect in the construction or condition of the car or the presence of any obstruction or object thereon upon which her skirt could have caught; and that of the defendant conclusively showed the absence of any defect in the construction or condition of the car and of any object or obstruction upon which plaintiff's skirt could have caught, the refusal of the trial court to peremptorily direct a verdict for the defendant upon its motion, made at the conclusion of the evidence, was reversible error.

2. Negligence—Evidence.—Negligence is never presumed. It must be established by direct and positive evidence thereof or by the proof of facts or circumstances from which it can properly be inferred. When the case is one of negligence or no negligence and the evidence is equally consistent with either, the party upon whom the burden of proving the negligence rests must fail. Especially is this true where it is sought to show the negligence entirely by circumstantial evidence.

3. Negligence—Proximate Cause—Evidence.—Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents. To authorize a recovery there must be

some tangible evidence from which it may be fairly inferred that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury. If the injury may as reasonably be attributed to a cause that would excuse the defendant as to a cause that will subject him to liability, then the well-settled rule is that a recovery cannot be had.

STRAUS, LEE & KRIEGER and HOWARD B. LEE for appellant,

L. A. HICKMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

· In this action the appellee, Eva Potter, recovered of the appellant, Louisville Railway Company, in the court below, a verdict and judgment of $552.50 damages for personal injuries sustained by her in attempting to alight from one of its cars at Fourth and N Streets in the city of Louisville; in doing which her dress caught, as alleged, on some part of the car and caused her to fall violently to the ground.

The negligence complained of as causing her fall and consequent injuries is thus stated in the petition:

"She states that the part of the car upon which her dress caught was negligently constructed and in a defective condition, and that she was caused to fall, as aforesaid, by reason of the gross negligence of defendant and defendant's employees in charge of said car, in using a car so constructed and in a defective condition."

The answer of appellant denied that the car was in a defective condition; that it was negligently constructed; that by reason thereof appellee was caused to fall, or that she was injured by the fall. The refusal of the circuit court to grant appellant a new trial resulted in this appeal.

The errors assigned for the reversal of the judgment are: (1) That the court should have instructed the jury peremptorily to find for the appellant; (2) That the verdict was unauthorized by, and is flagrantly against the evidence. It appears from the bill of evidence found in the record that appellee, her two children, and sister-in-law, Alice Potter, boarded the car together at a suburb of Louisville called Hazelwood, and that when the car arrived at Fourth and N Streets they left it to go to their home on the latter street. The

accident can better be described in appellee's own language, quoted from her testimony:

"A. Well, we got on there at Hazelwood about twenty-five minutes until two, and came to Fourth and N, and there I rang the bell before I got there, to get off, and I helped the two children off and I got down as far as the step and was aiming to make my step on to the ground and I found my skirt was fastened in the corner of the car; there was something it seemed to be sticking out there that caught my skirt, and the instant I looked around the skirt tore loose and that threw me out of the car on the ground, on my right knee, my whole weight went on my right knee and then I pitched over or fell over on my right side. Q. Did you see what it was that was catching your dress? A. No, sir; I couldn't tell what it was; I could see there was something under the skirt. Q. What prevented you from seeing it? A. The skirt was over whatever it was holding to the skirt; the skirt lay there."

At this juncture a skirt was shown appellee which she identified as the one worn by her at the time of the accident and this skirt she exhibited, containing the rent claimed to have been then made. Resuming her testimony, the witness further said:

"A. I stepped out this way and found my skirt was hooked over something. Q. Show them how that appeared to you—that hook on the skirt; just show them with your finger how that appeared. A. This is the way it was fastened down on the car, that was sticking up there (indicating); I could see the print of it this way, as I aimed to get off of the car; I had both feet down on the step and I aimed to make my step to the ground and I found my skirt was fastened and looked back to see what was the matter and there the skirt, something was sticking out this way in the skirt (indicating). The court: Where was the 'something?' A. Right at the platform at the corner of the car; I don't know what it was; it was right on the corner of the car. The Court: The side of the car? A. Right at the corner where the step runs up this way in this car and right in this corner, and right at the floor of this little platform is where this skirt was fastened (indicating). Q. Could you tell whether it was on the platform or on the side of the car? A. Well, I don't know; it was so close in the corner I couldn't tell whether it was on the side of the car or whether it was at the floor."

On cross-examination appellee testified, in part, as follows:

"Q. As you came out you noticed nothing the matter with the car, did you? A. No, I didn't see anything. Q. And you couldn't find anything the matter with the car, could you? A. I could see my dress was caught on something of the car. Q. You didn't know what it was? A. I couldn't see what it was. Q. Right there at the time didn't your sister-in-law say to you, 'I stepped on your skirt; it is my fault.' A. No, sir; she asked me if she did step on my skirt. Q. Didn't she know whether she stepped on your skirt or not? A. I didn't know whether she did or not; she asked me that."

The sister-in-law, Mrs. Alice Potter, testified in substance that she stepped from the car immediately behind appellee and saw her fall, but did not know what caused her to do so. She admitted, however, that at the time of the accident she said she must have stepped on appellee's dress and, in the excitement resulting from the accident, then thought she had done so; but at the time of the trial expressed the opinion that she had not stepped on appellee's dress, claiming she was in the car door and appellee on the steps when she fell. Both this witness and appellee also testified that they saw nothing upon or projecting from the side, platform floor or steps of the car upon which appellee's dress could have caught or been held.

Appellee's two children, present at the time of the accident, being too young to testify understandingly, were not introduced as witnesses; and the remaining witnesses introduced in her behalf only testified as to the character and extent of her injuries.

The evidence introduced by appellant was furnished by Chas. F. Bush, its conductor in charge of the car from which appellee fell; John Schalda, a passenger, and Edward Ater, an employee of appellant, also a passenger on the car. These three witnesses testified from an inspection made by them of the car immediately following the accident, that it was absolutely free of defects; and that there was nothing like a projection or other object on or about the walls, platform or steps of the car, upon which it would have been possible for appellee's skirt to catch or hang. With respect to what happened at the time of the accident, Bush on direct examination, testified as follows:

"Q. What happened there, Mr. Bush? Just in your own way tell the jury. A. Well, we were coming to Fourth and N Streets and made the usual stop for passengers to get off; as the car stopped, I opened up my exit door and two little children got off first, and as they got off, the lady (appellee) she came out to get off right after them, and she stepped out of the car on to the rear platform and went to step on the step and her dress stayed on the rear platform and this other lady (Alice Potter) following her—in some way she stepped on this lady's (appellee) dress and she fell to the street. Q. What did the lady there, who stepped on the other's dress—did you hear her say anything? A. I jumped out to help this other lady up and as I got out, she got up by the time I got out; I asked her if she was hurt and she said: 'No;' I said, 'Would you sign a card for me?' but she said, 'It wasn't your fault; it was the other lady's fault, she stepped on my dress; she stepped on my dress and it was her fault and wasn't yours.' Q. Did the big woman who came behind, did you hear her say anything? A. Well, she said she stepped on this other lady's dress."

On cross-examination Bush further testified as follows:

"Q. Isn't it a fact her dress hung on the platform and on the side of the car and that caused you to notice it? A. No, sir. Q. That is not a fact? A. No, sir; it is not a fact. Q. But, you did notice it immediately following. A. The other lady stepped on her dress. Q. Isn't it a fact that you made no careful examination of that platform or that side of the car? A. No, sir. Q. You just casually looked at it as you had been doing all that day and made no particular examination? A. No, sir; I paid particular attention to it. Q. When did you make this particular examination? A. Before we started up again. Q. What caused you to make a particular examination? A. If anything like that happens, why I always pay attention to it, and close attention to see. Q. As I understand it, both she and the lady with her told you the lady tramped on her dress and that caused her to fall. A. They both said it. Q. You had no reason to believe there was anything wrong with the car, did you? A. I usually look anyway to see. Q. You just looked anyway? A. Yes. Q. You didn't believe it when they said the cause of it was the lady tramping on her

dress? A. I know she tramped on it for she was still standing on it. A. You saw her standing on the dress? A. Yes, sir."

John Schalda, who was standing on the rear platform of the car and did not see appellee until after her fall, because of the wooden partition intervening between that part of the platform where he stood and the entry between the exit door and steps by which she left the car, but later from the steps obtained a view of the parties, testified as follows:

"A. The lady (appellee) said—she turned to the lady following her and she said, 'It was your fault that I fell.' Q. What else did she say? A. The conductor asked her for her name and she said: 'I am not hurt.' I don't know whether she gave her name or not."

Edward Ater, who occupied a seat fronting the car isle at the exit door through which appellee left the car, testified with reference to the accident, as follows:

"Q. Did you see what caused this lady to fall? A. Yes, sir; I did. Q. What caused it? A. The larger lady stepped on the other one's dress skirt. Q. Did you hear either of those ladies say anything afterwards? A. I heard the larger one say that it was her fault and that she stepped on the dress and it wasn't the conductor's fault at all. Q. Did you get up yourself and look out there at the time. A. Yes, sir; after the accident we examined the car. Q. Did you see anything the matter with the step or platform or inside of the car? A. No, sir; I didn't. Q. Was there anything there on which her dress could have caught? A. No, sir; we couldn't find anything. Q. What caused you to examine on the platform and steps. A. On account of the accident occurring. Q. You heard the lady say it was their fault, didn't you? A. Yes, sir. Q. How did you happen to examine the platform? A. Just to see if there was anything there that could catch her dress. Q. Did you make a special examination of it? A. I did. Q. You and Mr. Bush together? A. We did. Q. Did you look on the side of the car? A. All around in the vestibule. Q. You say you saw the large lady tramp on this lady's dress? A. I did. Q. Will you explain to the gentlemen of the jury how you could look through the large lady and see her tramp on this lady's dress? A. Well, the slender lady got off the car first, after she lets the two little children off and the slender lady steps down on

the steps, and as she gets off the car and left her dress skirt up in the conductor's vestibule, the large lady steps on her dress tail and when the slender lady goes to step to the ground, it throws her. Q. Isn't that just a theory of yours, that you heard? A. No, sir. Q. How could you see that? A. I was setting right within a few feet of it and seen it every bit. Q. Don't you know that this large lady filled up this entire door and you couldn't see by her to save your life? A. No, sir. Q. You could see by her then when she was standing in the door and see what she tramps on on the platform? A. I seen the space between the large lady and the slender lady; I seen the dress skirt laying in the platform. Q. You were sitting on the rear seat? A. Setting right at the door; I had to move my knee for them to pass out."

It is apparent from what has been said of the evidence that it wholly fails to show the negligence alleged as the cause of the accident, viz.: The use by appellant of a car "negligently constructed and in a defective condition." On the contrary, the evidence is clear, uncontradicted and convincing that the car was entirely free of defects. This evidence was, as we have seen, furnished by the testimony of appellant's witnesses, Bush, Schalda and Ater, from their inspection of the car at the time of the accident, corroborated by that of appellee and her sister-in-law, to the effect that they observed no defect in the side, platform or steps of the car or any impediment or object on any part thereof upon which appellee's skirt could have caught or been held. Leaving out of consideration the statements of appellee and her sister-in-law—admittedly made at the time of the accident when all its events ought to have been vividly impressed upon their minds—that the fall of the former was caused by the stepping upon her skirt of the latter, the only other testimony furnished by them as to the cause of the accident rests wholly upon inference or conjecture. Having as a foundation the fact or circumstance that her skirt caught upon or was held by something on the car, appellee and her sister-in-law, without claiming to have seen this "something" or otherwise proving its existence, or that it was a part of the car, by mere inference, reached the conclusion that its supposed presence rendered the car defective and its use dangerous, which manifested actionable negligence on the part of appellant.

It cannot be told from the inferences of appellee and her sister-in-law how the skirt of the former was caught. If it be conceded that what they said at the time of the accident as to the sister-in-law stepping on the skirt, was a mistake, as claimed by them upon the trial, there is much greater reason for the conclusion that all they said on the trial as to the cause of the accident was mere conjecture. In other words, their testimony in then attributing the catching of appellee's skirt to either the negligent construction of the car or a defect in its condition, without being able to indicate any defect in its construction or condition, but demonstrates the speculative character of the theory upon which appellee based her right of recovery.

In this view of the case, which we regard the correct one, it follows that the verdict of the jury finding that appellee's injuries were caused by the appellant's negligence in the particulars complained of, was based wholly upon conjecture. On the appellee's evidence alone the jury could have done nothing more than guess at the cause of her injuries; and it is a well settled rule that one litigant's right should not be guessed away for an opposing litigant upon whom the burden rests of establishing a cause of action. When the case is one of negligence or no negligence, and the evidence is equally consistent with either, the party upon whom the burden of proving the negligence rests must fail. Especially is this true where it is sought to show the negligence entirely by circumstantial evidence. Negligence is never presumed. It must be established by direct and positive evidence thereof, or by the proof of facts or circumstances from which it can properly be inferred. Early's Admr. v. Louisville H. & St. L. Ry. Co., 115 Ky. 13; Hughes v. Cincinnati, &c. R. R. Co., 91 Ky. 526; Wintuska's Admr. v. L. & N. R. R. Co., 14 R. 579; L. & N. R. R. Co. v. Vittitoe's Admr., 19 R. 612; Morris' Admr. v. L. & N. R. R. Co., 22 R. 1593; Stewart v. N. C. & St. L. Ry. Co., 146 Ky. 127; Wiedekamp v. L. & N. R. R. Co., 159 Ky. 674; Osborne v. C., N. O. & T. P. Ry. Co., 158 Ky. 176; L. & N. R. R. Co. v. Staten's Admr., 163 Ky. 760; Louisville Gas Co. v. Kaufman Straus & Co., 105 Ky. 155; Hurt v. L. & N. R. R. Co., 116 Ky. 552; Thomas' Admr. v. Eminence Milling Company, 151 Ky. 33.

Whenever circumstantial evidence is relied upon to establish a fact, the circumstances must be proved and not themselves presumed.

Any inference of fact or of law drawn from premises which are false or even uncertain is unreliable. The law requires an open, visible connection between the principal and incidental facts and the deductions from them, and does not permit a decision to be made upon remote inferences. A presumption which the jury is to make is not circumstantial proof; and is not, therefore, a legitimate foundation for a presumption. Our meaning is thus stated in Chamberlain's Modern Law of Evidence, section 1029:

"The requirement that the logical inference citing a presumption of fact should be a strong, natural and immediate one brings as a corollary the rule that no inference can legitimately be based upon a fact, the existence of which itself rests upon a prior inference. In other words, there can be in a great majority of cases no presumption upon a presumption. On the contrary, the fact used as the basis of the inference, the *terminus quo* must be established in a clear manner devoid of uncertainty."

It is patent from the record before us that the verdict of the jury was based altogether on the appellee's testimony creating a mere inference that the car must have been negligently constructed or negligently suffered to be in a defective condition, because her skirt became caught in some way as she descended therefrom. This was merely an inference drawn from an inference, unsupported by evidence. Indeed, any basis for such an inference or presumption was destroyed by the admissions of appellee and her sister-in-law, made in testifying, that they discovered no defect or object in the car, its platform or steps, which could have caused the skirt of appellee to be caught, and the positive testimony of appellant's three witnesses that their inspection of the car showed the absence of any such defect or obstruction; saying nothing of the equally positive testimony of two of them that they saw appellee's sister-in-law step on her skirt and thereby cause her to fall from the car.

As both appellee and her sister-in-law, notwithstanding their admission that they had said at the time of the accident the fall of the former from the car was caused

by the stepping of the latter on her skirt, denied on the trial that the accident had been so caused, such denial being contradictory of the testimony of appellant's witnesses, Bush and Ater, as to the manner of its occurrence, would have authorized the submission of the case to the jury, if there had been any evidence conducing to prove that the accident resulted from the negligent construction of the car or its defective condition; but as there was a total absence of such evidence, appellant was entitled to the peremptory instruction directing a verdict in its behalf, for which it asked at the conclusion of all the evidence. As said in the recent case of Louisville & Nashville Railroad Co. v. Stokes' Administratrix, 166 Ky. 142:

"Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents. To authorize a recovery there must be some tangible evidence from which it may be fairly inferred that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury. If the injury may as reasonably be attributed to a cause that would excuse the defendant as to a cause that will subject him to liability, then the well settled rule is that a recovery cannot be had."

For the reasons indicated, the judgment is reversed and cause remanded for a new trial; and if there should be another trial of the case and the evidence is substantially the same as on the last trial, the court should peremptorily instruct the jury to find for the appellant.