## National Life & Accident Ins. Co. v. Clark.
(Decided- April 24, 1936.)

H. H. OWENS for appellant.

TUGGLE & TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This action was brought in the Knox circuit court by the appellee, Maude Clark, on a health and accident policy issued by the appellant to John Henry Clark.

Plaintiff sued as the beneficiary named in the policy to recover, for the alleged accidental death of the insured, the face amount of the policy of $400.

Upon trial, the jury upon the evidence and under the instruction of the court returned a verdict finding the insured had suffered an accidental death, and that plaintiff was entitled to recover $400, the amount of the policy.

Challenging the propriety of this verdict and judgment thereon as unsupported by the evidence, and complaining that the instructions given by the court were erroneous, the insurance company has appealed.

It is disclosed by the record that on the night of November 7, 1934, the insured, John Henry Clark, died while on a spree and so greatly suffering as to indicate that his death was the result of having drunk some form of poison.

It was the contention of plaintiff that the insured's death was caused by drinking bad moonshine whiskey, which, unknown to him, contained some deleterious or poisonous substance. On the other hand, defendant contended that his death was the result, not of poison, but of overdrinking or acute alcoholism.

It is admitted that the policy upon which suit was here brought for recovery of its face amount was in force and effect at the time of insured's death and, among others, contained the following provision:

"If death is due directly and independently of all other causes from bodily injury, sustained while

the policy is in force and which is effected accidentally and through external and violent means, and the insured shall, within ninety days of the date of such injury * * * die, the company will pay * * * $400.00.''

The insured's wife, the appellee Maude Clark, was named as sole beneficiary under the policy, and this action was brought by her, seeking recovery of the insurance upon the theory that the insured, John Henry Clark, suffered an accidental death within the meaning of the policy.

The proof introduced in behalf of plaintiff, as tending to show that the insured suffered an accidental death, was to the effect that he was at the time a strong, healthy man, 34 years of age, regularly employed as a porter at the Arden Hotel in Corbin, Ky.; that on the night of his death, November 7, 1934, he went to the hotel about midnight, under the influence of drink, but was still in good spirits and laughed and talked with the night clerk and porter for about one-half hour.

They testify that he was drinking at this time, though was not drunk; that within three to five minutes after he left the hotel, they heard him scream out and at once went to his aid, when they found him collapsed on the pavement, writhing with pain; that they removed him to the hotel, where they tried to relieve his pain; and called Dr. Corum to treat him.

Dr. Corum, testifying upon the trial for the plaintiff as an expert, stated that when he was called upon the occasion, in evidence to administer to the insured, he was told ''they had a drunk over there and wanted to see if he could quiet him''; that when he reached the insured about one-half hour later, he found him there at the hotel, ''rolling and hollering and taking on,'' which indicated to him that ''he had a poison of some sort, which caused him to give him an injection of apomorphine to unload it''; that his suffering condition at the time was such as to indicate that he was both drunk and suffering from drink; that from his diagnosis of the insured's symptoms, he concluded that he was suffering with acute alcoholism; that the contents of insured's stomach or of the bottle from which he had

been drinking could have been analyzed, and that such an analysis would have positively disclosed whether or not the whisky of which he had been drinking contained deleterious or poisonous substance other than alcohol; that he was called again about two hours later to see Clark, when he "found him still laying there breathing" and gave him some more apo-morphine, which caused him to again vomit, and that he did so because Clark had the symptoms of then suffering with an "overdose of alcoholism"; that his opinion was that Clark "died from an acute poison of some sort"; that it "could have been alcohol—or could have been something in the alcohol"; that from this diagnosis made he had stated to the coroner that Clark had died from acute alcoholism, "that is, from drinking too much alcohol"; that "all alcohols are poisonous if taken in excessive doses"; and that it was his opinion that he had gotten some "bad bootleg." However, he stated that in his opinion, if there had been nothing wrong at the time with John Clark except drinking liquor, he would not have died from the treatment he gave him, from which he concluded there was something other than the liquor that caused his death.

At the conclusion of this evidence, defendant moved for a peremptory instruction, which was refused.

Thereupon, it introduced in evidence a copy of the insured's death certificate, reciting that Clark died from acute alcoholism.

Defendant's proof was, as testified by a colored neighbor of the deceased, that Clark was in the habit of going on frequent or periodic sprees, some of which were attended with bad attacks of indigestion; that the insured had told witness that his doctor had said that, "If he didn't quit drinking, it would kill him and told him to let it alone."

Dr. Tye was then called as an expert witness for the defendant, who in answer to the hypothetical questions, based upon the facts in evidence, stated that the apo-morphine given Clark would cause him to vomit and that the exertion put forth in so doing might cause a cerebral hemorrhage, or acute heart failure. Further, in answer to the hypothetical questions submitted by

the plaintiff's attorney, as to what the symptoms shown by Clark indicated upon this occasion, he stated that it seemed to him like there was some acute poisoning. Further he was asked if anything had been stated in answer to the hypothetical questions that could lead him, with any degree of certainty, to tell whether Clark died from acute alcoholism or other poison, to which he answered: "No, I could not say what caused his death from what I know about the case."

At the conclusion of the evidence, defendant renewed its motion for a directed verdict, which was again refused, and an instruction, offered by plaintiff, was given the jury. By that instruction they were told that if they believed from the evidence that John Clark drank or imbibed a liquid or drink containing poison and at the time he drank or swallowed same was ignorant of the fact that it contained poison, if it did, and as the direct and proximate result of swallowing such poison he died, then his death resulted accidentally and the law was for the plaintiff, and they should so find.

Upon this evidence and the given instruction of the court, the jury returned a verdict finding for plaintiff in the amount sued for.

The insurance company has appealed, asking for a reversal of the judgment on the ground that the evidence does not sustain the verdict, in that it was equally as consistent with or tended to show that insured's death was the result of acute alcoholism, which does not constitute accidental death within the meaning of the policy, as from other poison contained in the whisky, and that plaintiff had failed to maintain the burden of proof showing that the insured's death was due to drinking whisky, which, unknown to the insured, contained a poison which directly caused his death.

Further, it criticises the instruction given as prejudicially erroneous.

Appellee, on the other hand, contends that the evidence as to insured's having suffered an accidental death through drinking a liquid containing a poisonous substance, unknown to him, and which caused his death, was sufficient to support the jury's verdict so finding and clearly brought the case within the rule announced

in the cases of Woods v. Provident Life & Accident Ins. Co., 240 Ky. 398, 42 S. W. (2d) 499, 501, and Zurich General Accident and Liability Ins. Co. v. Flickinger (C. C. A.) 33 F. (2d) 853, 854, 68 A. L. R. 161, cited and relied on by her.

> "From an extensive examination of authorities, we find the general rule to be that, where the insured intends to swallow the food or drink which he does swallow, but is in ignorance of the fact that the substance swallowed contains a poison from which injury or death results, such injury or death is the result of 'accident' or 'accidental means,' within the meaning of an accident insurance policy which indemnifies against injury or death by accidental means. * * * And such injury or death is caused from 'external' and 'violent' means, within the meaning of those terms as used in such policies."

In the Zurich Case, supra, the evidence showed that the insured died as the result of drinking wood alcohol, which, unknown to him, he drank believing the liquid was gin in cocktails served him. The court there said:

> "We think there can be no question that the death of insured resulted from accidental means within the meaning of the policy. Insured intended, it is true, to drink the cocktails which he did drink and which caused his death, but he did not intend to drink poisonous wood alcohol, and did not know that wood alcohol was contained in what he was drinking. The case falls squarely, therefore, within the oft-quoted rule laid down * * * in the leading case of U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 759, 33 L. Ed. 60."

These cases, however, are very clearly distinguishable from the instant one, in that each of those cases it was clearly shown that the liquid which the insured drank with fatal results did, unknown to the insured, contain a hidden poison, which resulted in death and that it was the unexpected and unforeseen established fact that the liquid contained a poison, which resulted in and caused his death, which supported the inference that death was accidental, as having been caused by an

unintentional drinking by the insured of a poisonous substance.

Here the evidence does not show beyond mere conjecture or speculative presumption that the whisky drunk by the insured contained a poisonous substance and is therefore insufficient, being but an assumed premise, to support the inference that insured's death was accidental because of being the result of his unintentional drinking of a poisonous substance.

The rule is (Chamberlain's Modern Law of Evidence, sec. 1029) that:

"The requirement that the logical inference citing a presumption of fact should be a strong, natural, and immediate one brings as a corollary the rule that no inference can legitimately be based upon a fact the existence of which itself rests upon a prior inference; in other words, there can be in a great majority of cases no presumption upon a presumption. On the contrary, the fact used as the basis of the inference, the terminus quo must be established in a clear manner devoid of uncertainty."

By the doctors testifying in the instant case we are told that an analysis made either of the contents of the insured's stomach or of the whisky left in the bottle from which he was drinking upon this occasion would have clearly established whether or not the whisky insured drank contained a poisonous substance other than alcohol. However, no such analysis or proof as to the poisonous character of the liquor drunk has been adduced, but instead only are the circumstances here recited that the insured was drinking upon the night of his death, and that he thereupon somewhat suddenly died under conditions indicating he was suffering from some acute poisoning, which the expert witnesses here stated could have been just as well attributed to the excess alcohol imbibed by the insured's intentional overdrinking of bad whisky, producing a state of acute alcoholism, wherein the excess alcohol operated as a poison, as to presume that his death resulted from another form of poison, unintentionally received when drinking the whisky.

The expert testifying for plaintiff stated that in his opinion the insured's death was due to acute alco-

holism, which he describes as "liquor founder." Further, both experts state that, having only the evidence as to the circumstances under which insured died and his symptoms then manifested, they were left in doubt and unable to say whether insured's death was the result of drinking too much liquor or of drinking poisoned liquor.

Holding this view of the case, we are of the opinion that the jury's verdict, finding the insured's death was an accidental one within the meaning of the policy, as having been caused by his unintentionally drinking poisoned liquor, must needs have been based wholly upon conjecture, when it is observed that no proof had been adduced tending to show the whisky consumed by the deceased contained a poison.

By the evidence introduced by plaintiff, who had the burden of showing that insured's death was the result of his drinking liquor which unknown to him contained poison, there was an utter failure to establish the premise supporting the inference that the insured had upon this occasion drunk poisoned liquor, from which established fact the jury might infer his accidental death had resulted.

Having failed to establish the premise from which such inference could be deduced, the jury could do nothing more than guess at or speculate as to the cause of insured's death, as to whether due to acute alcoholism produced by his intentional overdrinking, or to his unintentional drinking of a poisoned liquor.

"It is the well settled rule that one litigant's right should not be guessed away for the opposing litigant, upon whom the burden rests of establishing a cause of action."

Where the plaintiff's right of recovery, as here, depends upon her showing that the insured suffered an accidental death by the unintentional drinking of poisonous liquor, and the evidence introduced falls short of tending to show such fact, but is equally consistent with showing a nonaccidental death, the party upon whom the burden of proving an accidental death rests must fail in that an inference of fact from a premise which is itself uncertain, is not to be sus-

tained. Louisville Ry. Co. v. Potter, 175 Ky. 258, 194 S. W. 308; Louisville & N. R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257; Chesapeake & O. R. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10.

Holding this view of the insufficiency of the evidence to support the verdict and that plaintiff failed to maintain the burden of establishing her right to recover as for the accidental death of the insuerd, for the reasons hereinabove indicated we conclude that the court erred in failing to sustain defendant's motion for a peremptory instruction. County of Leslie v. Hart, 232 Ky. 24, 22 S. W. (2d) 278.

In view of our conclusion thus reached, we deem it unnecessary to extend the opinion by a discussion of appellant's other grounds of objection urged for reversal.

Therefore, application for the appeal is allowed, appeal granted, the judgment reversed, and the cause remanded for further proceedings consistent with this opinion.