## Creech Coal Co. et al. v. Louisville & N. R. Co.

June 8, 1948.

As Modified on Denial of Rehearing October 22, 1948.

James Sampson, Edward G. Hill and Sampson & Sampson for appellants.

H. L. Bryant and J. C. Baker for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

On August 11, 1943, Jesse Brock, an employee of appellant, Creech Coal Co., was killed while dropping two loaded coal cars from the coal company's tipple to the storage tracks at its mine located at Twila in Harlan County, Ky. Both employer and employee had accepted the provisions of the Workmen's Compensation Law, KRS 342.001 et seq., and since it was not disputed that the accident was one which arose out of and in the course of his employment, dependents of deceased were paid the full commuted value of the award totaling $4,950. This is a suit by the employer and its insurance carrier, appellants herein, to recover from the Louisville & Nashville Railroad Co., appellee herein, the full amount paid to the employee, under the subrogation provisions of Section 342.055, KRS, it being contended by appellants that the death of its employee was caused by the negligence of appellee. At the close of appellants' testimony the judge of the lower court peremptorily instructed the jury to find for the defendant. From a judgment based upon that verdict, appellants prosecute this appeal.

## The Issues

Appellants base their right of recovery solely on the contention that appellee was guilty of negligence in furnishing to the coal company defective car or cars in the operation and control of which its employee met his death.

Appellee's defense was a denial of any negligence by reason of furnishing defective car or cars to the coal company. It further pleaded the provisions of a written contract which had been entered into in 1916 by the appellant coal company and appellee and which contract is still in effect, the pertinent part of which reads as follows:

"And the said second parties for themselves, successors and assigns hereby further covenant and agree with the first party that * * * they will hold said first party harmless against the claims of property owners who may claim damages for, or on account of the construction or operation of the said tracks. And the said second parties also agree to place no overhead structure lower than 22 feet above the top of the rail of said tracks, and to place no structure closer than eight feet from the center of the tracks, and to keep the tracks free from obstructions, and agree to hold the first party harmless from the claims and demands of any and all persons on account of any damages or injuries caused directly or indirectly by the existence, location or condition of any structures or obstructions of any kind on the premises of the second parties, or by any obstructions on said tracks."

Appellee contends that since the accident was caused by "an obstruction on said tracks," within the meaning of the terms of the above contract, and that obstruction was caused by employees of the appellant coal company, appellee is not liable. Appellee further contends that the death of Brock was caused by the negligence of another employee of the coal company for which appellee was not responsible.

## The Facts

About 4 p. m. on August 10, 1943, the day before the accident, appellee placed a train of 31 empty coal cars on the tail tracks above the tipple of appellant coal company and, since these tracks sloped to the tipple, the brakes were set by the employees of the appellee on a sufficient number of these cars to hold them until such time as they would be separately lowered by gravity and by the use of hand-brakes to the tipple to be loaded. Included among these were cars Nos. 84035, 87306 and 185547, the three cars involved in the accident which caused the death of decedent. On the day of the accident cars 84035 and 87306 were lowered by the usual gravity process from the tail tracks to the tipple where they were loaded to their capacity of 100,000 pounds each with slack or coal dust. Car 185547 was also lowered on another track under the tipple and loaded to its like capacity with stoker

coal. During the loading process the cars were held under the tipple and on the track and controlled by a hoist and rope. When filled they were dropped from under the tipple by the hoist, the hand-brakes were set and the hoist then detached from the cars. Cars 84035 and 87306 were coupled together, car 87306 being in the lead, and placed in charge of Jesse Brock to be dropped by him from their place near the tipple, where the hoist had been released and the brakes set, down the 3.07% graded track to the storage track of appellee where they were to be later picked up by appellee for shipment to their destination. Car No. 185547, loaded to capacity, was placed in charge of Felix Lee, another employee of the coal company with the same duties and responsibilities as the deceased, and which car was to be lowered to the storage tracks in the same way.

Leading from the main track, a distance of about 295 feet below the tipple, is a side track called the runaway track built and used, as the name indicates, for runaway cars that get out of control to prevent these runaway cars from colliding with other cars that may be standing on the main storage track. This runaway track is connected to the main track by a switch which is kept aligned for the runaway track so that a runaway car will always take the runaway track and eventually come to a stop without damage. Any car in control coming down the grade on the main track from the tipple must stop before it reaches the switch, align the switch for the main track, proceed past the switch onto the main track, then stop and realign the switch for the runaway track.

Lee dropped his car 185547 down the main track ahead of the two coupled cars, 84305 and 87306, being dropped by Brock. He reached the switch, stopped, aligned it for the main track, proceeded on the main track to what he no doubt thought was a safe distance, stopped his car, returned to the switch and realigned it for the runaway track. In the meantime Brock had started dropping his two coupled cars, they went out of control and when they reached the switch they passed onto the runaway track, a distance of 25 feet, but as Lee's car had not sufficiently cleared the switch to the

runaway track, the right front end of the two coupled cars being dropped by Brock collided with the left rear end of the car being handled by Lee, throwing Brock from the car on which he was riding and from which he received the injuries that resulted in his death.

## Responsibility for the Accident

There is no dispute about the facts down to this point and indeed they are taken from facts which are stipulated by the parties in the case. So the controversy boils down to this: Appellant contends that if the brake of Brock's car furnished by appellee had not been defective the cars would have come down the grade in control, he could have stopped, if necessary, at the runaway switch, waited for Lee to clear the main track, then have proceeded on to his destination down the main track. They therefore claim that the defective brake was the proximate cause of the death of decedent.

Appellee contends that the brakes were not defective when the cars were turned over to the coal company; that after they were turned over to the coal company it was its duty to see that the brakes were safe or in safe, workable order; that the proximate cause of the accident was the failure of Lee to properly clear the switch and get onto the main track a sufficient distance to enable the runaway cars to pass onto an unobstructed runaway track and that but for this negligence of Lee, an employee of the coal company and not under the control of appellee, Brock would have proceeded down the runaway track provided for runaway cars and the accident would not have happened; that Lee's car standing, as it was left by him, constituted an obstruction on the tracks within the meaning of the contract heretofore referred to under which the coal company was to hold appellee harmless for any accident caused by said obstruction.

The lower court based its peremptory instruction holding appellee not liable solely on the contract quoted above, it being the view of the court that the loaded car being dropped by Felix Lee was ''an obstruction on said tracks'' within the meaning of that contract. We think there were additional grounds to justify peremptory

instructions to the jury by the court. Had there been no contract relieving the appellee of liability for obstruction on the tracks, before it could recover appellant must show that the car on which Brock was riding had a defective brake which allowed the car to run away and caused the death of Brock. There was no direct or satisfactory proof of such defect but only an inference that might be drawn from the testimony that Brock, shown by the evidence to be a small man, was seen to be pulling the control lever with all his might and applying the brake as strongly as he was able to do, and from expert testimony based on a hypothetical question that the car could have been stopped if it had been equipped with a brake that was in good condition. We think the theory that the accident was caused by a defective brake was too speculative to have justified submission of the case to the jury and that the evidence produced brings this case within the rule enunciated in the case of Louisville Railway Co. v. Potter, 175 Ky. 258, 194 S. W. 308, 310, in which this court said:

"When the case is one of negligence or no negligence, and the evidence is equally consistent with either, the party upon whom the burden of proving negligence rests must fail. Especially is this true where it is sought to show the negligence entirely by circumstantial evidence. Negligence is never presumed. It must be established by direct and positive evidence thereof, or by the proof of facts or circumstances from which it can be properly inferred. (Citing cases)

"Whenever circumstantial evidence is relied upon to establish a fact, the circumstances must be proved, and not themselves presumed. Any inference of fact or of law drawn from premises which are false or even uncertain is unreliable. The law requires an open, visible connection between the principal and incidental facts and the deductions from them, and does not permit a decision to be made upon remote inferences."

We think the proximate cause of Brock's death was the negligent operation of appellants' employees in the dropping of loaded coal cars and particularly the negligence of Felix Lee in failing to clear the runaway track sufficiently to allow Brock's runaway cars to pass unobstructed down the runaway track provided for that

purpose. It is obvious that a heavily loaded coal car moving down a steep grade by gravity and controlled only by hand-brakes will, at times, get out of control and run away. That is why a runaway track is provided for just such an emergency. All considerations of safety would therefore seem to require proper spacing of the released cars so that the runaway track would always be available for the use for which it was intended. Had the runaway track in this instance been open and free from obstruction as provided in the contract referred to, the accident would not have happened even conceding that the brake on the car operated by Brock was defective.

After careful consideration of the entire case, we are of the opinion that the lower court properly instructed the jury to return a verdict for the appellee and its decision in so doing must therefore be affirmed.

Judgment affirmed.